THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD BRADSHAW *et al.,* Defendants-Appellants.

First District (3rd Division) Nos. 84—3119, 85—143 cons.

Opinion filed June 15, 1988.

972

Steven Clark and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant Ronald Bradshaw.

Paul P. Biebel, Jr., Public Defender, of Chicago (Jeffrey M. Howard, Assistant Public Defender, of counsel), for appellant Henry Hines.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Mary Ellen Dienes, and Michael K. Smith, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendants, Henry Hines and Ronald Bradshaw, were both convicted of two counts of aggravated battery, two counts of armed violence and one count of attempted murder. Hines was sentenced to 12 years in the Illinois Department of Corrections. Bradshaw was sentenced to 22 years in the Illinois Department of Corrections. On appeal, Bradshaw argues that: (1) he was denied the right to a fair and impartial trial because the trial judge erred in failing to recuse himself after having an *ex parte* conversation with the victim's mother in his chambers and (2) the State failed to prove him guilty beyond a reasonable doubt. Hines argues that his conviction should be reversed and this cause remanded for a new trial because, based on his erroneous belief that the trial judge did not have an *ex parte* communication with the victim's mother, he (1) improperly decided to forego a motion to substitute judges and (2) did not make a knowing and intelligent jury waiver. We reverse and remand for a new trial.

Bradshaw and Hines obtained a check in the amount of $13,457.75 made out to Nancy J. Greene. Desiring to cash this check, Bradshaw and Hines needed the assistance of a woman who would obtain false identification in the name of Nancy J. Green, open up a bank account in Green's name and then cash the check. The victim, Pamela McKnight, was a friend of Hines. Hines approached McKnight to enlist her assistance in this plan to cash the check. McKnight agreed to participate in the plan provided that she receive $3,000 from the check.

Hines subsequently introduced McKnight to Bradshaw. Bradshaw, Hines and McKnight then obtained false identification for McKnight. Bradshaw then gave McKnight $150 for an initial deposit, and McKnight proceeded to Citicorp Bank to open an account. However, when McKnight attempted to open the account, she was informed that she did not have the proper forms of identification. McKnight left the bank and returned the $150 to Bradshaw.

The following day, Bradshaw gave McKnight $250 to open an account at another bank. This bank also required identification that McKnight did not have, so she was unable to open an account. McKnight did not return this money to Bradshaw.

McKnight met Hines at a restaurant the next day. McKnight informed Hines that she did not have the money to return to Bradshaw

because she had been pickpocketed on the train. Hines then accused McKnight of lying and told her that Bradshaw would hurt her if she did not return the money. Hines also told McKnight to be "ready after school" because Bradshaw would be waiting for her.

McKnight saw Hines and Bradshaw the next day in the lobby of the building where she was taking classes. Bradshaw signalled McKnight to come over to where he and Hines were standing. Bradshaw questioned her about the money and McKnight explained why she did not have it. Bradshaw grabbed McKnight by the shoulder, told her to shut up and pulled out a knife that he was carrying. Bradshaw then stabbed McKnight three times in the stomach and twice in the back of her arm. As McKnight broke Bradshaw's grip and ran for safety, Bradshaw and Hines fled from the building. McKnight was then rushed to the hospital and underwent emergency trauma surgery.

Bradshaw and Hines were arrested and indicted for attempted murder, armed violence and aggravated battery. Prior to trial, Bradshaw made a motion for substitution of judges. In his motion, Bradshaw alleged that the trial judge was prejudiced in favor of McKnight because McKnight's mother, who is a deputy sheriff in the criminal courts building, had requested and had actually spoken with the trial judge.

A second judge heard the motion for substitution of judges. In his offer of proof, Bradshaw stated that Hines' mother, if called to testify, would state that she saw McKnight's mother write something down on an index card and give it to one of the assistant State's Attorneys. After which, the assistant State's Attorney gave the card to the trial judge. According to Ms. Hines' account, the trial judge then recessed the court and he and McKnight's mother went into the judge's chambers. Following argument, the second judge denied Bradshaw's motion for substitution of judges.

At trial, Bradshaw proceeded *pro se* and was tried by a jury. Hines waived his right to a jury trial and was tried by the trial judge. Following the introduction of evidence, the jury returned a verdict finding Bradshaw guilty on all counts as charged. Hines was also found guilty on all counts as charged on the theory of accountability.

In their post-trial motions, Bradshaw and Hines moved for new trials. Bradshaw argued that he was denied a fair trial because the trial judge entertained an *ex parte* communication with McKnight's mother, and therefore his motion for substitution of judges was improperly denied. Hines argued that based upon his reliance on the fact that no *ex parte* communication took place between the trial judge and McKnight's mother, he, to his detriment (1) did not make a mo-

tion for a substitution of judges and (2) did not make a knowing and intelligent jury waiver. Bradshaw further argued that the State failed to prove him guilty beyond a reasonable doubt.

During the hearing, Hines' mother and another woman, Dietrich Davis, testified on behalf of Bradshaw and Hines. The testimony of Hines' mother was essentially the same as that which Bradshaw introduced in his offer of proof in his original motion for substitution of judges. However, Ms. Hines this time testified that the note was handed to another deputy sheriff and not to an assistant State's Attorney. Davis testified that she saw McKnight's mother give a note to a deputy sheriff, later identified as Officer Lyles, who in turn handed it to the judge.

Following the testimony, the trial judge explained, "for the record," that he did receive a note from Officer Lyles which said, "[A] deputy sheriff would like to see you." The trial judge went on to state that he adjourned court shortly after receiving the note and met the deputy sheriff in his chambers. After the trial judge ascertained what the woman's relationship was to the case, he claimed that he "terminated the conversation." After giving this explanation on the record, the trial judge denied Bradshaw's and Hines' motions for new trials. This appeal followed.

Bradshaw and Hines first argue that the trial judge erred in not recusing himself from their case following his *ex parte* communication with McKnight's mother. We agree.

■ Rule 61(c) (103 Ill. 2d R. 61(c)) states:

"(4) *Avoidance of Impropriety.* A judge's official conduct should be free from impropriety and the appearance of impropriety ***.

* * *

(16) *Ex parte communications.* Except as permitted by law, a judge should not permit private or *ex parte* interviews, arguments or communications designed to influence his judicial action in any case, either civil or criminal."

Furthermore, Rule 17 of the circuit court of Cook County provides that a judge must disclose any *ex parte* communication in connection with any matter pending before the court to all parties at the next hearing date following that communication. Cook County Cir. Ct. R. 17.1 *et seq.*

■ Our reading of the provisions governing judicial conduct compels us to believe that a trial judge has an obligation to recuse himself whenever necessary to protect the right of an accused to a fair and impartial trial. A trial judge further has an obligation of assuring the

public that justice is administered fairly, because the appearance of bias or prejudice can be as damaging to public confidence as would be the actual presence of bias or prejudice. Therefore, there must be a concerned interest in ascertaining whether public impression will be favorable and the rights of an accused protected even though the judge is convinced of his own impartiality. *People v. Austin* (1983), 116 Ill. App. 3d 95, 101-02, 451 N.E.2d 593, 597; ABA Standards, The Function of the Trial Judge 35—36 (Approved Draft 1972).

Here, McKnight's mother was a deputy sheriff in the court building where Bradshaw's and Hines' trials were being conducted. As a deputy sheriff, she is a part of the justice system and therefore plays an integral role in the overall administration of justice. Two, or possibly more, persons witnessed this officer of the court pass a note to the trial judge who was presiding over a case wherein her daughter was the alleged victim. These persons then observed the presiding judge recess his court and enter into his chambers with the victim's mother. Although the judge maintains that he terminated the conversation when he ascertained the deputy sheriff's relation to the case, at that point, the appearance of impropriety had already been created.

Furthermore, the record does not evince that immediately following the *ex parte* communication the judge informed the parties that an *ex parte* communication had taken place. To the contrary, this communication was not made a part of the record until Bradshaw made a motion for substitution of judges based upon information he received from witnesses that an *ex parte* communication had taken place.

The judiciary is bound to maintain a favorable public impression that all defendants receive impartial trials and that justice is administered fairly. This obligation to our system of justice remains steadfast even though a judge is unequivocally sure that he is not partial to either litigant in a case pending before the court. Our commitment to the principle that justice is administered fairly binds us to hold that when an officer of the court is related to one of the parties before the court, and that officer engages in such conduct as passing notes to the presiding judge and immediately thereafter enters into the judge's chambers with that judge, an appearance of impropriety has been created such that the judge must recuse himself.

In reaching this conclusion, we do not imply that any improper motive existed on the part of the trial judge. What we do recognize, however, is that it is both the right of a defendant to have a trial before an impartial tribunal as well as the duty of a court to

avoid any appearance of impropriety. We therefore conclude that, based upon these facts, Bradshaw's motion for substitution of judges should have been granted and Bradshaw and Hines are entitled to a new trial.

■■ Bradshaw also contends that he was not proven guilty beyond a reasonable doubt. We believe that the evidence adduced at trial was sufficient for the jury to conclude that Bradshaw was guilty beyond a reasonable doubt. In reaching this conclusion, we do not make a finding as to Bradshaw's guilt or innocence which would be binding on retrial. We make this consideration of the sufficiency of the evidence admitted at trial solely for the purpose of removing the risk of subjecting Bradshaw to double jeopardy. *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366, 375.

Accordingly, the judgments of conviction are reversed and this case is remanded for a new trial as to both defendants.

Reversed and remanded.

WHITE, P.J., and McNAMARA, J., concur.