THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
VICTOR MUSSO, Defendant-Appellant.

First District (3rd Division)   No. 1—88—2683

Opinion filed March 18, 1992.

Michael J. Pelletier, Marc Davidson, and Barbara Kamm, all of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Linda D. Woloshin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Following a jury trial in July 1988, defendant, Victor Musso, was convicted of armed robbery and sentenced to 14 years' imprisonment by the Honorable Stephen A. Schiller. Prior to trial, defendant made several motions for substitution of the judge, based upon the appearance of impropriety created by the pending investigation of Judge Schiller's deputy sheriff, who attempted to solicit a bribe from the defendant in June 1987. Defendant's motion for substitution as well as a motion for recusal were both denied. On appeal, defendant argues that the failure of Judge Schiller to recuse himself created an "appearance of impropriety" which denied him a fair and impartial trial. Secondly, defendant contends that his 14-year sentence must be vacated and remanded for a new sentencing hearing, since the trial court relied upon an obsolescent psychological profile in determining the sentence.

Defendant was indicted on 10 separate counts, all pending before Judge Schiller. Following a jury trial in June 1987, defendant was found guilty of robbery on the first of these counts and sentenced to nine years' imprisonment by Judge Schiller. Shortly thereafter, defendant was approached by the deputy sheriff, Andy Lakatos, who offered to "fix" the defendant's remaining cases pending before Judge Schiller in exchange for $30,000. At the time, defendant was in the holding cell behind Judge Schiller's courtroom. Lakatos explained that half of the money would be distributed to himself and certain jurors, and the remainder to Judge Schiller. He guaranteed that the remaining cases would result in either "not guilty" or a "hung jury." Lakatos claimed that this method of funneling the money through the jury was used to distance Judge Schiller from the bribe operation.

Upon realizing that he could not obtain the requested money, the defendant feared the consequences of returning to Judge Schiller's courtroom, since Judge Schiller had repeatedly said to the defendant that he could "get 60 years." Defendant construed these statements

by Judge Schiller as a threat, to be carried out if defendant did not cooperate with the bribe scheme. On June 24, 1987, defendant contacted United States Attorney Anton Valukas and the Federal Bureau of Investigation (FBI). The FBI enlisted the cooperation of defendant's sister, Nancy Levita, who accompanied a female FBI agent to a fake court call. Equipped with a wire, Levita arranged to pay Lakatos $28,000. Lakatos apparently complained to the defendant that this would mean a lower payoff for himself, since Judge Schiller would still take "15 [thousand dollars] off the top."

A few days later, defendant met with the State's Attorney's office and the United States Attorney General's office to discuss leniency in exchange for the defendant's help in the bribe investigation. Defendant proposed that his nine-year sentence for robbery be reduced to "time served" and that the pending armed robbery charges be dismissed. Defendant also requested placement in the Federal Witness Protection Program. In exchange for the sentence reduction, Musso promised additional information about a planned escape from the Cook County jail.

On July 29, 1987, defendant filed a complaint against Judge Schiller with the Judicial Inquiry Board. In a reply letter dated August 11, 1987, the Board informed Musso that his complaint had been "taken under advisement."

On August 19, 1987, defendant attested to all of the foregoing facts at a hearing on his motion for substitution of judges. The Honorable Thomas Hett presided over the hearing. Defendant further testified that he believed the investigation of Judge Schiller by the Judicial Inquiry Board was still pending and that Lakatos had been indicted. Assistant Public Defender Marianne Burke, Musso's new counsel, argued to Judge Hett that the defendant would be forced to take a jury trial on the remaining charges. In ruling on the motion, Judge Hett noted that no witnesses who testified at the hearing were able to corroborate the statements of the defendant relating to the bribery investigation and the actions of the deputy sheriff. In addition, the petition was neither verified nor supported by an affidavit.

On August 20, 1987, the defendant filed a motion for counsel other than the public defender and moved for Judge Schiller to recuse himself based upon the appearance of impropriety. Judge Schiller declined to recuse himself, stating that he felt no personal prejudice or animosity toward the defendant. A private attorney, Charles Murphy, was appointed thereafter to represent Musso.

On April 25, 1988, a motion to reconsider his previous ruling on defendant's motion for substitution of judges was also denied by

Judge Hett. The parties stipulated that Musso testified to essentially the same facts as those presented at the August 19, 1987, hearing. Additionally, Musso testified that he had read two newspaper articles concerning the bribery investigation of the deputy sheriff. Both articles mentioned that Judge Schiller was under investigation. Musso did not recall if he had initiated contact with the newspapers.

In denying the motion a second time, Judge Hett noted that it was unclear as to whether Musso had contacted the newspapers himself. In addition, Judge Hett stated that defendant failed to meet his burden of demonstrating actual prejudice by Judge Schiller and that an "appearance of impropriety" was insufficient to grant a motion for substitution of judges. Judge Hett advised the defendant that his "best avenue of attack" would be to request that Judge Schiller recuse himself. On April 29, 1988, Musso again requested that Judge Schiller recuse himself based upon an appearance of impropriety. The motion was again denied.

■ Musso first argues that Judge Schiller improperly failed to recuse himself based upon an appearance of impropriety allegedly created by the actions of the deputy sheriff. In support thereof, defendant relies upon this court's ruling in *People v. Bradshaw* (1988), 171 Ill. App. 3d 971, 525 N.E.2d 1098. In *Bradshaw*, we held that the trial judge improperly failed to recuse himself after conducting a closed-door meeting with the victim's mother in his chambers. We noted that the "appearance of impropriety" created by the judge's conduct potentially damaged public confidence, even if no actual prejudice or bias existed. The proper test was set forth in *People v. Austin* (1983), 116 Ill. App. 3d 95, 100-01, 451 N.E.2d 593:

> "The appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as would be the actual presence of bias or prejudice. [Citation.]
>
> *** Nothing more can be suggested by way of guidance than that there be a concerned interest in ascertaining whether the public impression will be favorable, even though the judge is convinced of his own impartiality. The question never centers on the reasonableness or fairness of the image which is being created, but rather on the actual character of that image. [Citation.]"

The case *sub judice* can be factually distinguished from *Bradshaw*. Although both cases involve an appearance of impropriety, in *Bradshaw*, it was the judge himself who created such an appearance. In this case, the deputy sheriff and possibly the defendant created the improper impression. At the hearing on defendant's motion for substi-

tution of judges, the defendant could not recall if he had leaked the alleged bribe scheme to the press, nor were any witnesses available to corroborate defendant's allegations that the deputy sheriff had implicated Judge Schiller in the scheme. The fact that the scheme involved a jury as opposed to a bench trial calls into question the ability of Judge Schiller to participate in such a scheme.

■ Illinois Supreme Court Rule 62 reads in part: "A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities." (107 Ill. 2d R. 62.) This rule implies that it is the judge who must initiate the course of conduct which creates a disfavorable public impression. The instant case is perhaps more akin to *People v. Hall* (1986), 114 Ill. 2d 376, 499 N.E.2d 1335, wherein the defendant struck the judge and subsequently argued on appeal that he was denied a fair and impartial trial because the judge failed to recuse himself. In rejecting this argument, the court stated "[t]o hold that the law requires a substitution of judges under circumstances similar or comparable to those here would invite misconduct toward judges and lawyers, and a practice would develop that the grosser the misconduct the better the chances to avoid trial with an undesired judge or lawyer." 141 Ill. 2d at 407.

■ Applying the principles of *Hall*, the trial court properly refused to grant defendant's motion for substitution, since it was unclear as to whether the defendant himself leaked the alleged bribe scheme to the newspapers. Judge Schiller did not recuse himself, stating that he was entirely unaware of the bribe offered by his deputy sheriff. There were no witnesses or other evidence to substantiate the allegation of the defendant that the deputy sheriff had implicated Judge Schiller in the bribe scheme. Moreover, the fact that defendant was to receive a jury trial belies such an allegation. Under the circumstances, we cannot say the trial judge committed reversible error in failing to recuse himself.

■ The second issue presented on appeal is whether the trial court improperly relied upon a 20-year-old military psychological profile in sentencing the defendant. It is the responsibility of the trial judge to shield his mind from the possible prejudicial effect of unreliable or improperly considered evidence. (*People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451.) If the defendant shows that he has been prejudiced by material considered by the trial court, in conducting its presentencing inquiry, the resultant penalty will not be allowed to stand. *People v. McWilliams* (1932), 348 Ill. 333, 180 N.E. 832.

■ Although the trial judge mentioned the psychological profile prior to sentencing, it is not clear whether the judge actually relied upon the report in determining the sentence. The judge noted that he had been able to personally observe the actions of the defendant in the multiple cases which were tried before him and that he observed defendant's disrespect for authority. Moreover, a 14-year sentence out of a maximum of 60 years does not indicate any prejudice against the defendant. We, therefore, are not prepared to say that the sentence of the trial court was improper or prejudicial.

CONCLUSION

This case is a result of an attempted scheme by an employee of the sheriff's department who used his position as a courtroom aide to a judge to embellish his plan. No evidence has been presented to the appellate court that this judge was in any way aware of the chicanery of the sheriff's deputy. Based upon the evidence, the judge's refusal to recuse himself was not error. This court is in no stronger position than the trial court to evaluate whether the defendant created an appearance of impropriety or whether the judge was, in fact, prejudiced against the defendant. Moreover, the sentence imposed tends to indicate that the defendant received a fair and impartial trial. Therefore, the decision of the Cook County court is hereby affirmed.

Affirmed.

GREIMAN, P.J., and CERDA, J., concur.