July 17, 1998

NO. 5-97-0846

IN THE 

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

In re
 MARRIAGE OF                    )  Appeal from the 

                                     )  Circuit Court of 

FRANK WHEATLEY,                      )  Williamson County.

                                     )  

     Petitioner-Appellant,           )   

and                                  )  No. 96-D-187

                                     )

MARY JANE WHEATLEY,                  )  Honorable

                                     )  William H. Wilson, 

     Respondent-Appellee.            )  Judge, presiding.  

_________________________________________________________________

PRESIDING JUSTICE WELCH delivered the opinion of the court:

The Code of Judicial conduct states in part as follows:  

"CANON 2

A Judge Should Avoid Impropriety and the Appearance

of Impropriety in All of the Judge's Activities

A. A judge should respect and comply with the law and should conduct himself or herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

***

* * *

CANON 3

A Judge Should Perform the Duties of Judicial Office

Impartially and Diligently

***

A. Adjudicative Responsibilities

* * *

(4) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law.  A judge shall not initiate, permit, or consider 
ex parte
 communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding ***."  155 Ill. 2d Rs. 62A, 63A(4).

In the instant case, the petitioner, Frank Wheatley, argues that the circuit court of Williamson County violated these canons of the Code of Judicial Conduct in resolving the custody dispute between himself and respondent, Mary Jane Wheatley, for their five-year-old daughter, Tory Lynn Wheatley.  Frank argues that the trial judge hearing the custody matter received an 
ex parte
 communication intended to influence his decision in the case and that the receipt of this communication and the judge's handling of it create an appearance of impropriety in violation of the Code of Judicial Conduct.  He asks that we vacate the custody determination and remand the matter for a new hearing.  The facts can be briefly stated.

Tory was born to the parties on August 11, 1992, and the parties were married on May 27, 1995.  In May 1996, each party filed a petition to dissolve the marriage.  Both parties sought the custody of Tory.  On August 20, 1997, the matter came on for hearing on the issue of custody.  The guardian 
ad litem
, who had interviewed both parties as well as interested relatives and friends, acknowledged that both parties are good parents, but she recommended that sole custody be given to Frank.  The court-appointed home-study investigator also interviewed both parties and interested relatives and friends and, after acknowledging that both parties are good parents, recommended that sole custody be given to Frank.  The court heard extensive testimony from various witnesses.  After hearing the evidence, the guardian 
ad litem
 confirmed that she still believed that the best interests of the child would be served by granting sole custody to Frank.  

The trial court, in an order entered August 26, 1997, found that both parents are fit and proper persons to have custody, but having found Mary Jane's witnesses to be more credible than Frank's, the court awarded sole custody to Mary Jane.  

The alleged appearance of impropriety arose as follows.  On August 26, 1997, the date the trial court announced its decision in this case, the trial court also informed the parties of his receipt of the 
ex parte
 communication.  The trial judge explained that on August 18, 1997, just two days prior to the trial in this matter, he returned from a two-week vacation and began to go through his mail.  He discovered that he had received an envelope addressed to him and marked "personal and confidential," purporting to be from the office of a former United States congressman.  The judge opened the envelope and discovered that it was on the letterhead of a retired United States congressman and concerned a divorce case pending before him.  The judge had not yet seen the file in the case, and so he did not read the letter, but he folded it up, replaced it in the envelope, and left it on his desk.  He forgot about the letter until the day he rendered his decision in the case.  

After preparing his order in this case, the judge rediscovered the letter on his desk.  He opened it, saw that it referenced this case, read the first line which read, "As you know, custody cases are very difficult", and looked at the signature.  He folded the letter back up and did not read any further.  After consulting with another judge, the trial judge called the parties together to disclose to them his receipt of the letter and to render his decision in the case.  The judge insisted that he had never read the letter and that he had no idea what it contained.  Both parties were provided with copies of the letter.

The letter was contained in an envelope addressed to the judge.  The envelope is marked "personal and confidential", with a return address indicating the Congress of the United States, House of Representatives, and the name and address of the congressman.  It consists of three full, single-spaced, typewritten pages and argues strongly in favor of custody in Mary Jane.  Excerpts from the letter include: 

"I hepe [
sic
] the Court will not atke [
sic
] offense if I use my 24 years in Congress and the expertise of my Daughter in Florida[,] who has a Masters Degree in counseling, to point out at least a dozen reasons why I believe Mary Jane Wheatley, the Mother of this child[,] should have full custody with liberal visitation by the Father."  

The letter goes on to list those "dozen reasons", often referring to the reports of the guardian 
ad litem
 and the home-study investigator.  The letter concludes:   

"I want to apologize to the Court for this lenghty [
sic
] letter[;] however[,] since the child's very future is at stake I felt constrained to[,] as Paul Harvey would say[,] `tell the rest of the story'.  I pray that this baby can stay with it's [
sic
] Mother." 

It is purportedly signed by a retired United States congressman.

On August 29, 1997, petitioner filed a motion to vacate the judgment.  The motion alleges that the letter was an improper 
ex parte
 communication designed and intended by an ex-congressman of the United States to influence the court's decision, that the court had a duty to disclose the 
ex parte
 communication to the parties, and that the court violated this duty, resulting in judicial misconduct.  Accordingly, the motion alleges, the court had a duty to vacate the judgment and recuse himself so as to avoid even the appearance of impropriety.  The motion asks for a new trial before a different judge, even though the trial judge is convinced of his own impartiality.  

The motion came on for hearing on September 4, 1997.  Petitioner's attorney argued that it was irrelevant whether the trial judge had, in fact, read the letter or been influenced by it.  The gist of the motion was that the circumstances surrounding the judge's receipt of the letter and his failure to disclose it to the parties until after his decision was rendered created an appearance of impropriety, an appearance that the judge had received an improper 
ex parte
 communication from an influential person, that he had secretly kept the letter on his desk during the trial of the cause, during his deliberation of the cause and while making a determination of the cause, and that he may have been influenced by the letter's adamant pleas for the mother and by the seal of the United States Congress prominently displayed thereon.  Furthermore, both of the court-appointed, and therefore neutral and impartial, witnesses recommended sole custody in the father.  Only the retired congressman recommended sole custody in the mother.  Coincidentally, sole custody was indeed granted to the mother.  

Based on these circumstances, could a member of the public reasonably believe that politics had influenced the judge's decision on a matter of child custody?  And would such a belief bring the judiciary into disrepute in the mind of that individual?  Despite the judge's protestations that he had not read the letter or been influenced by it, the petitioner herein, the father, could have reasonably remained skeptical and believed that something improper had happened, that politics had influenced this most important of decisions.  Indeed, even the respondent, the mother, could have believed that the letter written on her behalf by an influential politician had helped her cause. 

The trial court denied the motion to vacate the judgment.  

In 
People v. Bradshaw
, 171 Ill. App. 3d 971, 975-76 (1988), this court pointed out that a trial judge has an obligation to assure the public that justice is administered fairly, because the appearance of bias or prejudice can be as damaging to public confidence as would be the actual presence of bias or prejudice.  Thus, even if the judge is convinced of his own impartiality, there must be a concerned interest in ascertaining whether public impression will be favorable.  171 Ill. App. 3d at 976.  In 
Bradshaw
, we held that an appearance of impropriety had been created where the trial judge was observed receiving a note from a deputy sheriff, who was the mother of the victim in the case, and then immediately recessing court and entering into chambers with the deputy, even though the judge maintained that he terminated the conversation when he ascertained the deputy's relation to the case.

In 
Bradshaw
, we held that the judiciary is bound to maintain a favorable impression that all parties receive impartial trials and that justice is administered fairly.  171 Ill. App. 3d at 976.  This obligation remains steadfast even though a judge is unequivocally sure that he is not partial to either litigant in a case pending before the court.  171 Ill. App. 3d at 976.  We held in 
Bradshaw
 that, under the circumstances of that case, an appearance of impropriety had been created and that the trial judge had a duty to recuse himself.  171 Ill. App. 3d at 976.  

In the instant case, there is no dispute that the trial judge did receive an improper 
ex parte
 communication which was designed and intended to influence his decision of the case.  The trial judge maintains that he did not read the letter, that he is unaware of its contents, and that it did not influence his decision in the case.  However, it is not the mere receipt of the improper communication which creates the appearance of impropriety.  The trial judge did not disclose the receipt of this improper communication but kept it in his office on his desk during the trial of the matter, during his deliberations on the case, and while drafting his judgment on the case.  Upon announcing that decision, the trial judge also disclosed his receipt of the improper communication.  This appearance of impropriety is bolstered by the purported identity of the sender of the letter (a former United States congressman), its adamant and strident pleas on behalf of the mother, and the fact that the mother was granted custody despite the fact that both the guardian 
ad litem
 and the home-study report recommended custody in the father.  It matters not whether the trial judge was in fact prejudiced or biased by the letter he received.  It is the 
appearance
 that he was so prejudiced or biased which mandates that his judgment be vacated and that the matter be remanded for a new trial before a judge who has not read the letter.  

We wish to address the concern expressed by the trial court that vacating his decision and recusing himself from the cause might lead others to believe that they could effect a substitution of a judge merely by sending him or her an 
ex parte
 letter.  As we have stated, it is not the mere receipt of the letter which creates the appearance of impropriety.  If the judge refuses to read or consider the letter and, as soon as practicable, discloses it to the parties, an appearance of impropriety may be avoided.  We find only that, under the totality of the circumstances as uniquely presented in this case, an appearance of impropriety was created, and the trial judge should have, upon petitioner's motion, vacated his decision and recused himself from further consideration of the case.  

Finally, we find the cases relied upon by respondent in her brief on appeal (
People v. Dunigan
, 96 Ill. App. 3d 799 (1981); 
In re Estate of Denaro
, 112 Ill. App. 3d 872 (1983); 
People v. Musso
, 227 Ill. App. 3d 514 (1992)), to be distinguishable on their facts from the case now before us.

In conclusion, we find that the actions of the trial court with respect to the 
ex parte
 communication created an appearance of impropriety and that the trial court erred in denying petitioner's motion to vacate the judgment of dissolution entered August 26, 1997.  Accordingly, we reverse the order denying the motion to vacate, vacate the judgment of dissolution entered August 26, 1997, and remand this cause for a new trial before a judge who has not read the letter in question.

Vacated and remanded.  

CHAPMAN and MAAG, JJ., concur.