THIRD DIVISION
September 10, 2008

No. 1-08-0342

JOSEPH KAMELGARD,       )  Appeal from the Circuit Court of
                )  Cook County, Illinois
     Petitioner-Appellant,   )
                )  No. 07 L 3322
   v.            )
                )  Honorable Randye Kogan,
AMERICAN COLLEGE OF SURGEONS, )  Judge Presiding
                )
     Respondent-Appellee.   )


PRESIDING JUSTICE MURPHY delivered the opinion of the court:

On March 30, 2007, petitioner, Joseph Kamelgard, M.D., filed a petition for discovery pursuant to Supreme Court Rule 224 (134 Ill. 2d R. 224) seeking the identities of three surgeons who investigated a complaint about petitioner received by respondent, the American College of Surgeons (the College). The trial court dismissed the petition after conducting an *in camera* review of certain documents. On appeal, petitioner argues that the dismissal should be reversed because (1) the court initiated an unlawful *ex parte* communication and (2) he was entitled to the identities of the three surgeons.

## I. BACKGROUND

Respondent is an association of surgeons that was founded in 1913 to promote the quality of care for surgical patients. In April 2006, respondent informed petitioner, a member of the College since 1996, that it had received a complaint regarding his expert testimony in a New

No. 1-08-0342

York medical-malpractice case. Respondent referred the complaint to its Central Judiciary Committee, who then engaged three surgeons specializing in bariatric surgery to review the complaint. In October 2006, the Central Judiciary Committee, having reviewed the complaint and the consulting experts' findings, charged petitioner with a violation of the College's bylaws. However, the Central Judiciary Committee met in February 2007 and summarily decided to take no further action.

On March 30, 2007, petitioner filed a petition for discovery before suit pursuant to Supreme Court Rule 224 seeking (1) the names and contact information of the physicians delegated by respondent to investigate the complaint and (2) any documentation generated by these physicians containing their findings, recommendations, conclusion, and investigation. The petition alleged that petitioner was damaged "as a result of the complaint" and "the potential adverse findings of such a complaint."

Respondent filed a motion to dismiss arguing that the information that petitioner sought was protected by section 8-2101 of the Code of Civil Procedure, commonly known as the Medical Studies Act (735 ILCS 5/8-2101 (West 2004)) and that the petition exceeded the scope of Rule 224. The motion was dismissed without prejudice. Respondent filed a renewed motion to dismiss, which reiterated its argument regarding the Medical Studies Act. The trial court held a hearing on the motion and set the case for status on January 16, 2008.

On Friday, January 11, 2008, the trial court's clerk, Gloria Gibbs, left a voice message for respondent's lawyer, Marc Silver, indicating that the judge wanted to conduct an *in camera* review of the documents that were requested by petitioner. Gibbs requested that Silver deliver

the documents on Monday or early Tuesday so the judge could review them before the status hearing scheduled for Wednesday. Silver did not return Gibbs's call or otherwise speak to her.

On Monday, January 14, 2008, Gibbs called Silver again and spoke to another attorney that worked on the case. She requested that the documents be delivered promptly and before Wednesday's status hearing. When Silver arrived at his office, he gathered the complaint and the documents exchanged between respondent's Central Judiciary Committee and the three advising bariatric surgeons. An independent messenger company delivered the documents to the judge's chambers late Monday afternoon. After the messenger left with the documents, Silver called the judge's docket clerk to advise that the documents were on their way. No other communications occurred in connection with the submission of the documents.

Included with the documents was a cover letter, which stated, "Pursuant to your request for an *in camera* review, please find" the enclosed documents, "which are the documents we understand Dr. Kamelgard to be seeking." Silver copied petitioner's attorney without the enclosures and sent it to him by United States mail that day.

Counsel for both parties appeared at the January 16 status hearing, where the judge announced that she was dismissing the petition and distributed a memorandum opinion to the parties. In the opinion, the court found that, having reviewed the briefs and exhibits, heard oral argument, and conducted an *in camera* of the submitted documents, it was terminating the petition.

Petitioner did not receive respondent's January 14 letter until January 18. On January 17, 2008, petitioner filed a motion to reconsider arguing, *inter alia*, that he was entitled to the names

and addresses of the three consultant physicians and that he was not informed that the court would be examining documents *in camera*. Upon discovering that the trial court had indeed conducted an *in camera* inspection of the documents, petitioner filed a motion requesting that the court vacate the judgment, recuse itself, and stay consideration of his motion to reconsider. Petitioner argued that the trial court had engaged in *ex parte* communications with respondent's attorney, in violation of Supreme Court Rules 62 (155 Ill. 2d R. 62) and 63 (210 Ill. 2d R. 63) and Cook County Circuit Court Rule 17.1 (Cook Co. Cir. Ct. R. 17.1 (eff. February 1, 1985)). The judge noted that she did not communicate with respondent's counsel and that petitioner's counsel was sent a copy of the transmittal letter. Therefore, the court denied petitioner's motion to vacate.

## II. ANALYSIS

### A. *Ex Parte* Communication

Petitioner argues that the trial court should have recused itself pursuant to Rule 63(C) (210 Ill. 2d R. 63(C)) and vacated the dismissal because the communications between the judge's staff and respondent's attorneys regarding the *in camera* inspection were *ex parte*. He concludes that because the trial court engaged in "unlawful and unethical judicial conduct," his petition for discovery must be reinstated. When reviewing a trial court's recusal decision, we must determine whether the decision was an abuse of discretion. *Barth v. State Farm Fire & Casualty Co.*, 228 Ill. 2d 163, 175 (2008).

Supreme Court Rule 62(A) provides that a "judge should respect and comply with the law and should conduct himself or herself at all times in a manner that promotes public confidence in

-4-

No. 1-08-0342

the integrity and impartiality of the judiciary." 155 Ill. 2d R. 62(A). Pursuant to Rule 63(A)(4), a "judge shall not initiate, permit or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding." 210 Ill. 2d R. 63(A)(4). See also 134 Ill. 2d R. 3.5 (eff. August 1, 1990) (Rules of Professional Conduct) (a lawyer shall not communicate *ex parte* with a judge). Petitioner also argues that the trial court violated Cook County Circuit Court Rule 17.1 (Cook Co. Cir. Ct. R. 17.1 (eff. February 1, 1985)), which provides that "[n]o judge shall permit and no lawyer shall engage in ex parte communications, unless allowed by law, in connection with any matter pending before said judge." Cook Co. Cir. Ct. R. 17.1 (eff. February 1, 1985). If an *ex parte* communication occurs, the judge must disclose the circumstances and substance of the communication to all parties of record at the next hearing. Cook Co. Cir. Ct. R. 17.2 (eff. February 1, 1985). If a hearing is not scheduled within two full court days of the communication, the lawyer who initiated the communication must promptly serve a written summary of its contents on all parties of record and the judge. Cook Co. Cir. Ct. R. 17.2 (eff. February 1, 1985).

The trial court ruled, and respondent underscores, that the judge herself did not contact petitioner's attorney. The judge stated, "I did not communicate with opposing counsel. I had my law clerk call. *** It was my law clerk that merely requested the documents that were referred to in the motion." Rule 63(B) is clear, however, that the judge's law clerk is an extension of the judge. "A judge should require staff, court officials and others subject to the judge's discretion and control to observe the standards of fidelity and diligence that apply to the judge." 210 Ill. 2d R. 63(B)(2). The judge's clerk called respondent's attorney but not petitioner's attorney.

-5-

No. 1-08-0342

Therefore, these calls constituted *ex parte* communications. See Black's Law Dictionary 597 (7th ed. 1999) (an *ex parte* communication is a "communication between counsel and the court when opposing counsel is not present"). Had petitioner been given notice, he might have objected to the *in camera* review or requested additional evidence.

An exception to Rule 63 authorizes *ex parte* communications "for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues," provided that "the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the *ex parte* communication" and "the judge makes provision promptly to notify all other parties of the substance of the *ex parte* communication and allows an opportunity to respond." 210 Ill. 2d R. 63(A)(4)(a). Respondent contends that "the trial court's arrangement for receiving disputed documents for its own review" was merely an administrative matter that had nothing to do with the substance of the dispute. We consider the clerk's calls to respondent's attorney to be "on the merits" where the trial court requested documents and dismissed the petition based upon them.

Under Rule 63, the judge who participates in an *ex parte* communication must make "provision promptly to notify all other parties of the substance of the *ex parte* communication and allow[] an opportunity to respond." 210 Ill. 2d R. 63(A)(4)(a)(ii). Petitioner was notified of the communication both when respondent's counsel provided him with a copy of the January 14 letter to the court and when the trial court's January 16 memorandum discussed the *in camera* review. See *People v. Dunigan*, 96 Ill. App. 3d 799, 812 (1981).

That respondent hand-delivered the letter to the judge but mailed it to petitioner is

suspect. Time was of the essence in this case, since respondent sent the letter and documents Monday in preparation for Wednesday's hearing. Respondent knew or should have known that the mail could well be delayed until after the hearing. In this case, it was. Petitioner cites a number of out-of-state authorities in support of his argument that respondent was required to hand-deliver the letter to him, as it did to the trial court. However, Supreme Court Rule 11 (145 Ill. 2d R. 11) specifically provides that one option for serving papers to opposing counsel is to deposit them in a United States mailbox. 145 Ill. 2d R. 11(b)(3). While perhaps this rule should be revisited, Rule 11 does not forbid hand-delivering a letter to the court and mailing a copy to the opposing party.

In his petition to vacate, petitioner requested that the court recuse itself and vacate the judgment. Under Rule 63(C), a judge shall recuse herself in a proceeding in which "the judge's impartiality might reasonably be questioned," including instances where the judge has a personal bias concerning a party or a lawyer, or when the judge has served as a lawyer in the matter in controversy. 210 Ill. 2d R. 63(C)(1). A motion for recusal is not the same as a motion for substitution of judge. Unlike a motion for substitution of judge, a motion for recusal does not trigger a duty on the part of the trial judge to transfer the motion to another judge for determination. *People v. Antoine*, 335 Ill. App. 3d 562, 570 (2002). On the contrary, "the trial judge is in the best position to determine whether he or she is prejudiced against" a litigant. *People v. Kliner*, 185 Ill. 2d 81, 169 (1998). The trial judge, who was in the best position to determine whether she was prejudiced against petitioner, denied the motion for recusal, and we see no indication in the record to the contrary.

Petitioner also moved to vacate the order. Although the January 18 letter delivery precluded petitioner from opposing the court's *in camera* review before it terminated the petition, during the February 4, 2008, hearing, the court offered twice to grant petitioner's motion for reconsideration and to allow him to brief the *in camera* review issue:

"THE COURT: If you feel that you wish to address the *in camera* inspection, fine, I will vacate the order and I'll give you a chance to write anything you wish to write about the *in camera* inspection.

MR. ZAREMSKI [petitioner's attorney]: I'm asking the court to recuse itself.

***

MR. ZAREMSKI: *** Are you denying our motion to reconsider as well?

THE COURT: I will grant the motion to reconsider. I will vacate my order, and I will allow you to address the *in camera* inspection if you wish to do so.

MR. ZAREMSKI: Your Honor, my first--that motion was never presented, the motion to reconsider. The only motion before your Honor is a motion to vacate the January 16th order and to recuse based upon violations of the Illinois Supreme Court Rules.

THE COURT: Your motion is denied. Thanks very much."

"A primary purpose of the waiver rule is to ensure that the trial court has the opportunity to correct the error." *York v. El-Ganzouri*, 353 Ill. App. 3d 1, 10 (2004). In *Meyers v. Woods*,

374 Ill. App. 3d 440 (2007), the defendant argued that the trial court erred in allowing the plaintiff's amended prayer for relief on the day of trial. The trial court asked the defendant if he wanted a continuance to reconstruct his case, but he "eschewed" that option and elected to proceed with trial. On appeal, the court stated, "If there was any error here, defendant consented to it by refusing the continuance." *Meyers*, 374 Ill. App. 3d at 453. Similarly, in *Janisco v. Kozloski*, 261 Ill. App. 3d 963, 967 (1994), the defendant waived his objection to the plaintiff's violation of an *in limine* order when he rejected the trial court's offer to give a contemporary curative instruction or one at the end of the evidence and instead opted to proceed without an instruction. Here, where petitioner refused the very relief that he now seeks on appeal, he waived his argument that the order should be vacated. *Meyers*, 374 Ill. App. 3d at 453; *Janisco*, 261 Ill. App. 3d at 967.

Petitioner claims that he did not waive his request for reversal of the January 16 order, because "why would Kamelgard expect fairness and equity from a trial court who invites him" to reargue his case after dismissing it based on *ex parte* communications? He argues that the trial judge engaged in "despicable, unethical conduct" and analogizes her to "a fox guarding the chicken coop" that was "caught with its hand in the cookie jar." Petitioner cites no authority for this argument. We therefore conclude that, by rejecting the exact relief that he seeks on appeal, petitioner has waived his arguments.

Furthermore, *In re Marriage of Wheatley*, 297 Ill. App. 3d 854 (1998), and *People v. Bradshaw*, 171 Ill. App. 3d 971 (1988), cases that petitioner cites in support of his argument that the dismissal order must be vacated, are distinguishable. In *Wheatley*, the trial court received a

letter from a congressman discussing the merits of a divorce case pending before him and advocating that custody be granted to the wife. Although the trial judge insisted that he did not read the letter, he did not inform the parties about the letter until eight days later, after he had prepared the custody order. "The trial judge did not disclose the receipt of this improper communication but kept it in his office on his desk during the trial of the matter, during his deliberations on the case, and while drafting his judgment on the case." *Wheatley*, 297 Ill. App. 3d at 858. The appearance of impropriety was bolstered by the fact that the mother was granted custody despite the recommendations of both the guardian *ad litem* and the home-study report that custody be granted to the father. *Wheatley*, 297 Ill. App. 3d at 858. Therefore, the trial court erred in refusing to vacate the judgment. *Wheatley*, 297 Ill. App. 3d at 859.

In *Bradshaw*, the judge received a note that a deputy sheriff wanted to see him. He adjourned and met the deputy in his chambers, only to discover that the deputy was the victim's mother. The judge stated that after he ascertained the deputy's relationship to the case, he ended the conversation. On appeal, the court held that the appearance of impropriety had been created, regardless of whether the judge terminated the conversation when he learned of the deputy's identity. *Bradshaw*, 171 Ill. App. 3d at 976. Furthermore, the judge did not make this communication part of the record until the defendant made a motion for substitution of judge. *Bradshaw*, 171 Ill. App. 3d at 976. The court concluded that the trial judge should have recused himself. *Bradshaw*, 171 Ill. App. 3d at 976.

We find *Bauer v. Memorial Hospital*, 377 Ill. App. 3d 895 (2007), to be more applicable. In *Bauer*, the trial court conducted an *ex parte* communication with the plaintiffs' attorney about

the propriety of allowing the defendants' attorney to testify. On appeal, the Fifth District ruled that the *ex parte* communication was improper because it was not for scheduling, administrative purposes, or an emergency; the judge could not have reasonably believed that no party would gain a procedural or tactical advantage as a result of the communication; and the judge did not promptly notify the other parties of the communication and allow them an opportunity to respond. *Bauer*, 377 Ill. App. 3d at 911. Nevertheless, the court distinguished that case from *Wheatley* and *Bradshaw* because "it was no secret that an *ex parte* communication occurred, nor was the subject of the *ex parte* communication a secret." *Bauer*, 377 Ill. App. 3d at 912. Furthermore, unlike *Wheatley* and *Bradshaw*, reversal was unnecessary because "there is no suggestion of bias *** on the part of the trial judge, *i.e.*, there is no suggestion that there was any outside influence or that the case was decided on any basis other than the evidence presented in the case." *Bauer*, 377 Ill. App. 3d at 912. Accordingly, the court found that any error committed by the trial court was harmless. *Bauer*, 377 Ill. App. 3d at 912.

Similar to the *Bauer* court, we note that petitioner had received a copy of the letter to the judge and the court's January 16 opinion, which referenced the *in camera* review. See *Bauer*, 377 Ill. App. 3d at 912. Although petitioner received the letter after the court made its decision, the trial court offered to allow him to brief the *in camera* issue. Furthermore, while petitioner decries the trial court's conduct as "unlawful and unethical," "there is no suggestion that there was any outside influence or that the case was decided on any basis other than the evidence presented in the case." *Bauer*, 377 Ill. App. 3d at 912; *People v. Moffat*, 265 Ill. App. 3d 469, 472 (1994) (there was no evidence suggesting that the judge was influenced by the alleged *ex*

*parte* communication). We conclude that, even if petitioner had not waived this argument on appeal, any error committed by the trial court was harmless. *Bauer*, 377 Ill. App. 3d at 912.

Petitioner further claims that *In re Cosgrove*, Att'y Registration & Disciplinary Comm'n No. 01 CH 76 (June 24, 2004), mandates that we reverse the dismissal of his petition. In *Cosgrove*, the police issued an overweight-truck citation to an employee of a trucking company. The owners of the trucking company were friends with Judge Buoscio and asked him to "find out" about the citation. Judge Buoscio contacted Judge Sheridan, in whose courtroom the case was to be heard, and asked him to ask the assigned assistant State's Attorney to "help" the owners. Before the case was heard, Judge Sheridan told Thomas Cosgrove, the assistant State's Attorney assigned to that courtroom, that a judge friend of his had called him about the case and asked him to strike the citation with leave to reinstate. When the case was called, the defendant's attorney presented a motion to quash; however, Cosgrove told the court that did not think he could meet his burden of proof and moved to strike with leave with leave to reinstate. The review board concluded that the administrator failed to prove a violation of Rule 8.4(a)(7), which provides that a lawyer shall not assist a judge in conduct that he knows is a violation of the Code of Judicial Conduct.

While petitioner attempts to compare Cosgrove to respondent's attorney, we reiterate that respondent mailed petitioner a copy of the letter in question, and in its memorandum opinion, the court specifically stated that it had conducted an *in camera* review. While the court dismissed the petition before petitioner had the opportunity to oppose the *in camera* review, the trial court twice offered to allow petitioner to brief the *in camera* review issue. Petitioner declined.

Therefore, we hold that the trial court did not abuse its discretion when it refused to recuse itself and vacate the January 16, 2008, order.

## B. Dismissal of Rule 224 Petition

Petitioner argues that he was entitled to the identities of the three bariatric surgeons who consulted with the Central Judiciary Committee. Respondent contends that the trial court properly dismissed the petition because the requested discovery went beyond the scope of Rule 224 and into the details of actual wrongdoing.

Rule 224 allows a person to file an independent action for discovery "for the sole purpose of ascertaining the identity of one who may be responsible in damages." 134 Ill. 2d R. 224(a)(1)(i). "The order allowing the petition will limit discovery to the identification of responsible persons and entities ***." 134 Ill. 2d R. 224(a)(1)(ii). We review the trial court's decision to terminate the petition under an abuse-of-discretion standard. *Beale v. EdgeMark Financial Corp.*, 279 Ill. App. 3d 242, 253-54 (1996); *Gaynor v. Burlington Northern & Santa Fe Ry.*, 322 Ill. App. 3d 288, 289, 297 (2001).

The trial court conducted an *in camera* review of the complaint filed against petitioner, as well as the documents exchanged between the Central Judiciary Committee and the three consulting surgeons, and dismissed the petition because "that information goes to establish liability and not to identify potential defendants." Citing *Beale*, the trial court noted that a Rule 224 petition cannot be used to build a case; it may only be used to determine the identity of one who may be potentially liable. Accordingly, the trial court terminated the petition on the basis that the discovery that petitioner sought went beyond the scope of Rule 224.

The letter drafted by respondent's counsel to the trial court hints that the documents contain the names of the consulting surgeons, which petitioner would have been entitled to under Rule 224. See 134 Ill. 2d R. 224(a)(1)(i). After all, it seems unlikely that "documents exchanged between the *** Central Judiciary Committee and the three bariatric surgeons who served as experts" would not contain the names of those consulting surgeons. However, the documents examined by the trial court *in camera* were not made part of the record, a burden borne by the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). Because we do not have before us the documents that the trial court reviewed *in camera*, we cannot determine whether the trial court was correct in concluding that they "go to establish liability and not to identify potential defendants."

Assuming that the documents reviewed *in camera* merely "establish liability" instead of the identities of potential defendants, the trial court was correct in denying petitioner access to them. Rule 224 provides that it is for "the *sole* purpose of ascertaining the *identity* of one who may be responsible." (Emphasis added.) 134 Ill. 2d R. 224(a)(1)(i). As the Fifth District held in *Roth v. St. Elizabeth's Hospital*, 241 Ill. App. 3d 407, 414 (1993), "the focus is on identity and not on the determination of the responsibility of those identified."

In *Beale*, the petitioner filed a petition for presuit discovery against EdgeMark Financial alleging that EdgeMark and certain of its officers and directors committed fraud and violated securities laws. The petition sought discovery of all information provided in response to a letter from the National Association of Securities Dealers, the production of board-meeting minutes, and discovery into the transfer of certain stock to an unknown party. The trial court granted the

first request and limited discovery concerning the second and third requests to the identity of the unknown transferee and the names of certain officers and directors. EdgeMark moved to modify the first request; after an *in camera* review, the trial court ordered EdgeMark to turn over the document. On appeal, we held that "[w]here the petitioner is apprised of a sufficient connection to the injury by an individual or entity *** within the universe of potential defendants, the petitioner may not seek further discovery of facts pertaining to any actual wrongdoing." *Beale*, 279 Ill. App. 3d at 252. "When in the trial court's discretion the petitioner seeks to establish actual liability or responsibility rather than potentiality for liability, discovery should be denied." *Beale*, 279 Ill. App. 3d at 253.

Finally, petitioner contends that a hearing is required for a Rule 224 petition. Petitioner relies on *Shutes v. Fowler*, 223 Ill. App. 3d 342 (1991), which noted, "The rule requires a hearing on the petition for discovery and thus involves the trial court in the process." *Shutes*, 223 Ill. App. 3d at 346. Respondent contends that this statement was *dicta* because it was within the court's explanation that the involvement of the circuit court protects against abuses of the discovery process. See *Shutes*, 223 Ill. App. 3d at 346. We note, however, that the substance of the summons for discovery form described in Rule 224 states, "Pursuant to law a hearing will be held to determine whether such an order shall be entered in this case." 134 Ill. 2d R. 224(a)(2). We hold, therefore, that petitioner was entitled to a hearing before the trial court dismissed his petition.

Respondent argues that the trial court did in fact conduct a hearing on whether petitioner's discovery was outside the scope of Rule 224. We disagree. First, while the trial

court conducted a hearing on respondent's renewed motion to dismiss, the motion and hearing were strictly confined to the application of the Medical Studies Act. Respondent argued that petitioner's discovery was outside the scope of Rule 224 in its initial motion to dismiss, which was denied, but did not raise it again in its renewed motion. Second, although the trial court offered to vacate its judgment and allow petitioner to file additional briefs, the trial court's offer was restricted to the *in camera* inspection issue, not whether the petition was outside the scope of Rule 224.

Therefore, we conclude that the trial court erred when it dismissed petitioner's petition.

### III. CONCLUSION

For the foregoing reasons, we reverse the trial court's order.

Reversed and remanded.

NEVILLE and CAMPBELL, JJ., concur.