Rule 23 order filed
February 25, 2015;
Motion to publish granted
March 31, 2015.

2015 IL App (5th) 140037

NO. 5-14-0037

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| DUANE HASSEBROCK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Marion County. |
| | ) | |
| v. | ) | No. 12-L-56 |
| | ) | |
| CEJA CORPORATION, | ) | Honorable |
| | ) | Michael D. McHaney, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE SCHWARM delivered the judgment of the court, with opinion.
Presiding Justice Cates and Justice Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1                                        BACKGROUND

¶ 2      In October 1999, Deep Rock Energy Corporation (Deep Rock) and the plaintiff, Duane Hassebrock, as the owners of several Marion County oil and gas leases covering various tracts of land south of Stephen A. Forbes State Park (the Omega leases), entered into a letter agreement (the letter agreement) with the defendant, Ceja Corporation, an oil and gas exploration and development company headquartered in Tulsa, Oklahoma. Under the terms of the letter agreement, the defendant agreed to perform a seismic survey of the land covered by the Omega leases in exchange for a 25% working interest in the

1

leases. The agreement further provided that should the results of the seismic survey warrant drilling and development on the Omega leases, the defendant would operate the wells, and the parties would enter into a separate agreement regarding the defendant's operations. The agreement gave the defendant 120 days after the completion of the seismic survey to submit a proposed operating agreement. The letter agreement stated that its terms would "remain in full force and effect for a term coextensive with any operating agreement."

¶ 3    It is undisputed that the parties never entered into an operating agreement with respect to the Omega leases. It is further undisputed that Deep Rock later obtained numerous oil and gas leases to various tracts of land in and around Stephen A. Forbes State Park (the Forbes leases) and that Deep Rock and the defendant developed working oil wells pursuant to those leases, without the plaintiff.

¶ 4    In May 2002, the plaintiff filed a "Notice of Claim of Interest" with the Marion County clerk and recorder of records (the notice). The notice alleged that the plaintiff had a claim of interest in the Forbes leases and specifically named Deep Rock and the defendant as parties to the notice. Further alleging that the plaintiff, the defendant, and Deep Rock had entered into a joint venture agreement with respect to the Omega leases and the Forbes leases (the venture agreement), the notice suggested that Deep Rock and the defendant had violated the terms of the venture agreement by not giving the plaintiff his proportional interest in the Forbes leases, as "was understood and agreed between all joint venture members."

¶ 5    In Marion County case number 02-MR-63, Deep Rock subsequently sued the

plaintiff to remove the notice as a cloud on its title to the Forbes leases. The plaintiff, in turn, filed a counterclaim against Deep Rock seeking to enforce the alleged terms of the venture agreement. In his pleadings, the plaintiff asserted, among other things, that the parties had "orally agreed" to acquire and develop the Forbes leases.

¶ 6    In December 2004, the plaintiff and Deep Rock entered into a settlement agreement resolving their respective disputes in No. 02-MR-63 (the settlement agreement). Pursuant to the terms of the settlement agreement, the plaintiff and Deep Rock released each other from all claims arising from the venture agreement, and Deep Rock gave the plaintiff $2.5 million. Deep Rock also assigned to the plaintiff a 1% carried working interest in the oil "produced and saved" from the Forbes leases, and the plaintiff assigned to Deep Rock all of his right, title, and interest in and to the leases. Pursuant to the terms of his assignment to Deep Rock, the plaintiff warranted that the assigned title to his interests in the Forbes leases was free and clear of all adverse claims, and he forever released and disclaimed all claims described in the notice. He further released and disclaimed "all claims, rights, titles[,] and interest in oil and gas leases in, off setting[,] or adjoining Steven [*sic*] Forbes State Park."

¶ 7    In February 2011, in the circuit court of St. Clair County, the plaintiff filed a complaint against Deep Rock alleging that it had breached the terms of the settlement agreement. The plaintiff subsequently filed a first amended complaint alleging additional counts against the defendant for breaching the terms of the venture agreement.

¶ 8    In March 2011, the defendant and Deep Rock filed motions to transfer venue from St. Clair County to Marion County. In July 2011, the circuit court of St. Clair County

3

granted the motions, and the cause was transferred to Marion County, where it was assigned case number 11-L-47.

¶ 9 In September 2011, arguing that the plaintiff's claims regarding the venture agreement were improperly joined with his claims regarding the settlement agreement, the defendant filed a motion to dismiss the counts against it and to dismiss it as a party in No. 11-L-47. In November 2011, finding that the plaintiff's attempted joinder of the defendant was improper under the circumstances, the trial court granted the defendant's motion to dismiss.

¶ 10 The plaintiff subsequently filed a second amended complaint that again combined his claims against Deep Rock and the defendant. The defendant and Deep Rock responded with motions to dismiss the plaintiff's second amended complaint, noting that the complaint had failed to cure the defects that had resulted in the first complaint's dismissal. In February 2012, stating that the plaintiff's cause of action against Deep Rock was "separate and distinct" from his cause of action against the defendant, the trial court entered an order striking all references to the defendant and the venture agreement from the plaintiff's second amended complaint.

¶ 11 The plaintiff subsequently filed a third amended complaint that again combined his claims against Deep Rock and the defendant. In response, the defendant and Deep Rock filed motions to dismiss the third amended complaint for failure to comply with the trial court's previous order. In June 2012, noting that the plaintiff's third amended complaint was "virtually identical" to his second, the trial court granted the motions to dismiss and ordered that the plaintiff's causes of action against the defendant and Deep

4

Rock be severed. In September 2012, after denying the plaintiff's motion to reconsider, the trial court entered an order formally severing the causes of actions, and the plaintiff's case against the defendant was assigned case number 12-L-56.

¶ 12    In No. 12-L-56, the plaintiff subsequently filed a "fourth amended complaint" against the defendant. The complaint alleged, among other things, that the defendant and Deep Rock had violated the terms of the venture agreement by "failing to share the benefits" of the developed Forbes leases. The complaint sought compensatory damages from the defendant as a result of the alleged violation.

¶ 13    In October 2012, the defendant filed a motion to dismiss the plaintiff's fourth amended complaint as improperly pled (see 735 ILCS 5/2-615 (West 2012)). The trial court granted the defendant's motion in part, striking numerous portions of the complaint. A fifth amended complaint followed, which the defendant also moved to dismiss as improperly pled. In August 2013, the trial court granted the defendant's motion to dismiss the plaintiff's fifth amended complaint "in its entirety."

¶ 14    In September 2013, the plaintiff filed a sixth amended complaint against the defendant. Consistent with his previous pleadings, the plaintiff's complaint sounded in breach of contract and breach of fiduciary duty. The complaint alleged that in 1999, the plaintiff, the defendant, and Deep Rock had orally agreed to acquire and develop the Forbes leases pursuant to the joint venture agreement, but he had ultimately been denied the opportunity to benefit from the leases. The plaintiff thus sought damages from the defendant for its failure to share with him the benefits of the Forbes leases.

¶ 15    In October 2013, the defendant filed two motions to dismiss the plaintiff's sixth

5

amended complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)). In its first motion to dismiss, the defendant argued that the plaintiff's claims were barred by the five-year statute of limitations applicable to unwritten contracts. See 735 ILCS 5/2-619(a)(5) (West 2012) (allowing for dismissal where "the action was not commenced within the time limited by law"). In its second motion, the defendant argued that the plaintiff's claims were barred by the terms of the release and the assignment that Deep Rock obtained pursuant to the settlement agreement. See 735 ILCS 5/2-619(a)(6) (West 2012) (allowing for dismissal where "the claim set forth in the plaintiff's pleading has been released, satisfied of record, or discharged in bankruptcy").

¶ 16 In his responsive pleadings in opposition to the defendant's motions to dismiss, the plaintiff argued that because the defendant was not a named party to the release, it could not claim protection by its terms. The plaintiff also argued that the 10-year statute of limitations applicable to written agreements was applicable to his cause of action. He further suggested that the "continuing" nature of his "injury" rendered any statute-of-limitations argument "meritless." Notably, the plaintiff did not address or acknowledge the defendant's argument that his claims were barred by the assignment.

¶ 17 In December 2013, the cause proceeded to a hearing on the defendant's motions to dismiss pursuant to section 2-619. Although the defendant argued all three grounds set forth in its motions as reasons to dismiss the plaintiff's cause of action, the plaintiff only directly addressed the arguments regarding the statute of limitations and the release.

¶ 18 The trial court subsequently entered an order granting the defendant's section 2-

619 motions and dismissing the plaintiff's cause of action in the present case with prejudice. The court's order did not specify on which grounds the motions had been granted, but it did state that both "motions to dismiss [were] granted." In January 2014, the plaintiff filed a timely notice of appeal in the present case. In February 2014, the trial court entered an order granting partial summary judgment in favor of Deep Rock in No. 11-L-47. In the same order, the trial court stated, without elaboration, that it was recusing itself from all future proceedings in either case.

¶ 19                               DISCUSSION

¶ 20   On appeal, the plaintiff argues that the trial court erred in granting the defendant's motions to dismiss because his claims against the defendant are not time-barred and because the defendant was not a named party to the release. He further argues that the defendant is judicially estopped from claiming that it is entitled to the benefits of the release. The plaintiff also suggests that it was improper for the trial court to enter judgment in the defendant's favor and then recuse itself without stating why.

¶ 21                    Plaintiff's Statement of Facts

¶ 22   At the outset, the defendant complains that the plaintiff's statement of facts violates Illinois Supreme Court Rule 341(h)(6), which requires that an appellant's brief include a statement of facts "which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Feb. 6, 2013). The defendant argues that the plaintiff's statement of facts is argumentative, includes few citations to the record, and further includes numerous

7

assertions that "are not even in the record at all." We agree and will accordingly ignore those portions of the plaintiff's brief that fail to comply with Rule 341(h)(6). See *Aboufariss v. City of De Kalb*, 305 Ill. App. 3d 1054, 1058 (1999); *Finance America Commercial Corp. v. Econo Coach, Inc.*, 95 Ill. App. 3d 185, 186 (1981).

¶ 23                                    Section 2-619 and Standards of Review

¶ 24    A motion to dismiss pursuant to section 2-619 admits the legal sufficiency of a plaintiff's complaint but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). "Dismissal pursuant to section 2-619 is warranted only where it clearly is apparent that no set of facts can be proved that would entitle a plaintiff to recover." *Thornton v. Shah*, 333 Ill. App. 3d 1011, 1018 (2002).

¶ 25    "Section 2-619 motions present a question of law, and we review rulings thereon *de novo*." *Burciaga*, 223 Ill. 2d at 59. The construction of a contract, settlement agreement, or assignment; the applicability of contract principles; and the applicability of a statute of limitations to a cause of action are matters of law that are also reviewed *de novo*. See *Carr v. Gateway, Inc.*, 241 Ill. 2d 15, 20 (2011); *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009); *Cincinnati Insurance Co. v. American Hardware Manufacturers Ass'n*, 387 Ill. App. 3d 85, 99 (2008); *Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461, 466 (2008); *Whirlpool Corp. v. Certain Underwriters at Lloyd's London*, 278 Ill. App. 3d 175, 179 (1996).

¶ 26    "When a trial court grants a motion to dismiss without specifying on which ground, all grounds raised by the movant are placed before the reviewing court." *Costa*

8

*v. Stephens-Adamson, Inc.*, 142 Ill. App. 3d 798, 801 (1986). Additionally, when reviewing a section 2-619 dismissal, we can affirm the trial court's judgment "on any basis present in the record." *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004).

¶ 27                                    Statute of Limitations

¶ 28    "The primary purpose of limitation periods is to require the prosecution of a right of action within a reasonable time to prevent the loss or impairment of available evidence and to discourage delay in the bringing of claims." *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill. 2d 129, 132 (1975). "Under section 2-619(a)(5) of the Code, a defendant is entitled to a dismissal if the 'action was not commenced within the time limited by law.' " *Lamar Whiteco Outdoor Corp. v. City of West Chicago*, 355 Ill. App. 3d 352, 359 (2005) (quoting 735 ILCS 5/2-619(a)(5) (West 2002)). The statute of limitations for unwritten contracts and breach-of-fiduciary-duty claims is 5 years (735 ILCS 5/13-205 (West 2012); *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 618 (2007)), while the statute of limitations for written contracts is 10 years (735 ILCS 5/13-206 (West 2012)). A cause of action accrues for statute-of-limitations purposes "when the plaintiff 'knew or reasonably should have known that it was injured and that the injury was wrongfully caused.' " *Lubin v. Jewish Children's Bureau of Chicago*, 328 Ill. App. 3d 169, 171-72 (2002) (quoting *Superior Bank FSB v. Golding*, 152 Ill. 2d 480, 488 (1992)).

¶ 29    The plaintiff's cause of action in the present case stems from his assertions that the defendant breached the venture agreement. It is undisputed, however, that the alleged

9

terms of the venture agreement were never reduced to writing and that whatever plans had been made with respect to the Forbes leases were oral agreements and understandings. It is further undisputed that when the plaintiff filed the notice in May 2002, he was fully aware that the defendant and Deep Rock had developed the Forbes leases without him. The plaintiff commenced his case against the defendant in February 2011, which the trial court rightfully found was well beyond the five-year statute of limitations applicable to unwritten contracts and breach-of-fiduciary-duty claims. Accordingly, we affirm the court's judgment granting the defendant's 2-619 motion on the ground that the plaintiff's cause of action is time-barred.

¶ 30    As he argued below, the plaintiff maintains that the 10-year statute of limitations applicable to written contracts should govern his claims because they emanate from the letter agreement. He further maintains that, alternatively, given the "continuing" nature of his complained-of injury, "the statute of limitations has yet to run." We disagree.

¶ 31    "Illinois courts strictly interpret the meaning of a written contract," and "[a] contract is considered written for purposes of the statute of limitations if all essential terms are reduced to writing and can be ascertained from the instrument itself." *Toth v. Mansell*, 207 Ill. App. 3d 665, 669 (1990). "If parol evidence is necessary to make the contract complete, then the contract must be treated as oral for purposes of the statute of limitations." *Id.* "In other words, where a party is claiming a breach of a written contract, but the existence of that contract or one of its essential terms must be proven by parol evidence, the contract is deemed oral and the five-year statute of limitations applies." *Armstrong v. Guigler*, 174 Ill. 2d 281, 287 (1996). "Moreover, the fact that the

origin of a cause of action may ultimately be traced to a writing has never been sufficient, standing alone, to automatically warrant application of the period of limitations governing written contracts." *Id*. at 290.

¶ 32 Here, the letter agreement dealt solely with the possible development of the Omega leases, not the Forbes leases, and the agreement expired by its terms when the parties failed to enter into an operating agreement with respect to the Omega leases. Moreover, none of the terms of the venture agreement were reduced to writing, and none are ascertainable from the letter agreement. Because parol evidence is thus necessary to prove the existence and terms of the venture agreement, the trial court rightfully rejected the plaintiff's argument that the 10-year statute of limitations applicable to written contracts should govern his instant claims.

¶ 33 The trial court also rightfully rejected the plaintiff's suggestion that his "continuing injury" renders any statute-of-limitations argument irrelevant. In the proceedings below, the plaintiff cited *Kovacs v. United States*, 614 F.3d 666 (7th Cir. 2010), in support of this position. In *Kovacs*, the court discussed the "continuing violation doctrine" as a "defense to the statute of limitations," noting that "[t]he doctrine applies when 'a tort involves a continued repeated injury' and 'the limitation period does not begin until the date of the last injury or when the tortious act ceased.' " *Id.* at 676 (quoting *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 442 (7th Cir. 2005)); see also *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 345 (2002) (and cases cited therein) ("Under the 'continuing violation rule,' embraced by our appellate court, where a tort involves a continuing or repeated injury, the limitations period does not begin to run

11

until the date of the last injury or the date the tortious acts cease."). Breach of contract is not a tort (*Bass v. SMG, Inc.*, 328 Ill. App. 3d 492, 504 (2002); *Burnet v. Chapin*, 274 Ill. App. 186, 190 (1934)), and "[t]he law in Illinois is that breach of a fiduciary duty is not a tort," either (*Robinson v. LaCasa Grande Condominium Ass'n*, 204 Ill. App. 3d 853, 859 (1990)). "The Illinois Supreme Court has regarded the breach of a fiduciary duty as controlled by the substantive laws of agency, contract[,] and equity." *Robinson*, 204 Ill. App. 3d at 859. The trial court thus properly determined that the continuing violation rule was inapplicable to the plaintiff's cause of action.

¶ 34    On appeal, in addition to arguing the applicability of the continuing violation rule, the plaintiff also argues that the venture agreement imposed a "continuous duty" on the defendant's part to share in the profits from the Forbes leases and that each failure to do so is a separate breach with its own accrual date. He thus argues that his present action is not time-barred because the defendant continues to profit from the Forbes leases. Although the plaintiff technically waived this argument by not raising it below (*Illinois Tool Works, Inc. v. Independent Machine Corp.*, 345 Ill. App. 3d 645, 652 (2003) (noting that "it has long been held that arguments not raised in the trial court are considered waived on appeal"), we will nevertheless address its merits.

¶ 35    "An action for breach of contract accrues when the breach of the contractual duty or obligation occurs" (*Newell v. Newell*, 406 Ill. App. 3d 1046, 1051 (2011)), and "[g]enerally, the statute of limitations begins to elapse when 'facts exist which authorize the bringing of an action' " (*Skinner v. Shirley of Hollywood*, 723 F. Supp. 50, 54 (N.D. Ill. 1989) (quoting *Kozasa v. Guardian Electric Manufacturing Co.*, 99 Ill. App. 3d 669,

12

673 (1981))). "Applying the statute of limitations is more difficult, however, with respect to contracts involving a continuing or repeating condition." *Id*. "For example, when a money obligation is payable in installments, the statute of limitations begins to run against each installment on the date it becomes due." *Id*.; see also *Hi-Lite Products Co. v. American Home Products Corp.*, 11 F.3d 1402, 1408-09 (7th Cir. 1993) (and cases cited therein) ("Contracts requiring continuous performance are capable of being partially breached on numerous occasions," and "[e]ach partial breach is actionable and is subject to its own accrual date and own limitation period."). " 'A continuous contract, [however,] is capable not only of a series of partial breaches but also a single total breach by repudiation or a material failure of performance.' " *Hi-Lite Products Co.*, 11 F.3d at 1409 (quoting *Segall v. Hurwitz*, 339 N.W.2d 333, 343 (Wis. Ct. App. 1983)); see also 15 Williston on Contracts § 45:19 (4th ed. 2000) ("[I]t is a general principle of contract law that a continuing contract is capable not only of a series of partial breaches but also of a single total breach by repudiation or a material failure of performance."). "If a single breach occurs, either by repudiation or material failure of performance, the claim accrues at that time and the statute of limitations begins to run for all claims on that contract." *Hi-Lite Products Co.*, 11 F.3d at 1409; see also *Minidoka Irrigation District v. Department of Interior*, 406 F.3d 567, 572-74 (9th Cir. 2005); *In re Chemtura Corp.*, 448 B.R. 635, 660-65 (Bankr. S.D.N.Y. 2011).

¶ 36   Here, the defendant and Deep Rock materially breached and repudiated the venture agreement in its entirety when they developed the Forbes leases without the plaintiff.  See *InsureOne Independent Insurance Agency, LLC v. Hallberg*, 2012 IL App

13

(1st) 092385, ¶ 43 ("[W]hether a breach is 'material' is whether it is 'so substantial and fundamental as to defeat the objects of the parties in making the agreement[.]' " (quoting *Village of Fox Lake v. Aetna Casualty & Surety Co.*, 178 Ill. App. 3d 887, 900 (1989))); *Record v. Kempe*, 2007 VT 39, ¶ 15 ("A party repudiates a contract when that party explicitly or implicitly represents that he cannot or will not perform his obligations under the contract."). Thus, even if we were to construe the venture agreement as constituting a continuous-performance contract as the plaintiff suggests, the statute of limitations began to run when the total breach occurred. As previously noted, the plaintiff was fully aware of the defendant's total breach when he filed the notice in May 2002, and under the circumstances, he cannot now avail himself of "the general rule that, for statute of limitations purposes, a party may sit back and wait for each required payment as such payments come due in the future." *In re Chemtura Corp.*, 448 B.R. at 661.

¶ 37 We lastly address the plaintiff's contention that the defendant "arguably" waived its statute-of-limitations defense by failing to raise it "until two years into the litigation." As previously indicated, in February 2011, in the circuit court of St. Clair County, the plaintiff filed his initial complaint against Deep Rock and his first amended complaint, in which he added his claims against the defendant. In March 2011, the defendant and Deep Rock moved to transfer the case to Marion County, which was accomplished in July 2011. From September 2011 through September 2012, the defendant's efforts were directed at severing the plaintiff's claims against it from his claims against Deep Rock, which ultimately required attacking the plaintiff's first, second, and third amended complaints. From October 2012 through July 2013, the defendant attacked the plaintiff's

14

fourth and fifth amended complaints as improperly pled. In August 2013, the trial court granted the defendant's motion to dismiss the plaintiff's fifth amended complaint. In September 2013, the plaintiff filed his sixth amended complaint. In October 2013, the defendant filed its first motion to dismiss the plaintiff's sixth amended complaint, arguing that the plaintiff's claims were time-barred.

¶ 38 The right to invoke a statute-of-limitations defense can be expressly waived or waived by conduct inconsistent with an intent to enforce that right. *Dever v. Simmons*, 292 Ill. App. 3d 70, 74 (1997); *Bailey v. Petroff*, 170 Ill. App. 3d 791, 798-99 (1988). Here, however, nothing suggests that the defendant ever intended to waive the defense, and no such intent can be inferred from the defendant's challenges to the plaintiff's earlier complaints. *Id.* We also note that most of the delay that the plaintiff complains of on appeal was occasioned by his commencement of his action in St. Clair County and his subsequent failures to comply with the trial court's orders regarding the substance of his pleadings. Additionally, in his pleadings in the present case, the plaintiff did not acknowledge that the venture agreement was an unwritten contract until he filed his sixth amended complaint. Under the circumstances, the defendant timely raised his statute-of-limitations defense, and the plaintiff's suggestion that the defendant waived the defense is wholly without merit.

¶ 39 Release and Assignment

¶ 40 Assuming that the plaintiff's claims against the defendant were not time-barred by the five-year statute of limitations applicable to unwritten contracts and breach-of-fiduciary-duty claims, we would still have to find that the trial court erred in its

15

determination that the claims were also barred by the release and the assignment that Deep Rock obtained pursuant to the settlement agreement. Section 2-619(a)(6) allows for dismissal where "the claim set forth in the plaintiff's pleading has been released, satisfied of record, or discharged in bankruptcy." 735 ILCS 5/2-619(a)(6) (West 2012). As previously noted, we can affirm the trial court's judgment on any basis present in the record. *Raintree Homes, Inc.*, 209 Ill. 2d at 261.

¶ 41 Under the terms of the settlement agreement, the plaintiff and Deep Rock released and fully discharged each other from all claims arising from the venture agreement, and the plaintiff received $2.5 million. It is undisputed that the defendant was not named or referenced in the release that Deep Rock obtained pursuant to the settlement agreement, but in its second motion to dismiss the plaintiff's claims pursuant to section 2-619, the defendant argued that the release "resulted in the release of all the claims being asserted by [the plaintiff] against [the defendant] in this case."

¶ 42 Under Illinois law, causes of action premised on breach-of-contract and breach-of-fiduciary-duty claims arising from a single indivisible injury are subject to the common-law rule that the unqualified release of one co-obligor operates as a release of all co-obligors, unless a contrary intent is apparent from the face of the release. See *Cherney v. Soldinger*, 299 Ill. App. 3d 1066, 1070-75 (1998); see also *Holland v. United States*, 621 F.3d 1366, 1380 (Fed. Cir. 2010) ("Under Illinois law, the absolute and unconditional release of one co-obligor releases all other co-obligors *even if* the other co-obligors 'were not a party to the release or specifically identified in the release.' " (Emphasis in original.) (quoting *Cherney*, 299 Ill. App. 3d at 1070)); *Diamond Headache Clinic, Ltd.*

16

*v. Loeber Motors, Inc.*, 172 Ill. App. 3d 364, 369 (1988) ("The law of Illinois is well established that a full and unconditional release of one of several co-obligors on a joint obligation also discharges the other co-obligor."). The common-law rule applies regardless of whether the unidentified co-obligors owed differing duties to the aggrieved party (*Cherney*, 299 Ill. App. 3d at 1073-74; *In re Doctors Hospital of Hyde Park, Inc.*, 494 B.R. 344, 370 (Bankr. N.D. Ill. 2013)), and the intent examined is whether the release was intended as absolute and unconditional, not whether it was intended to release all co-obligors (*Cherney*, 299 Ill. App. 3d at 1074; see also *Holland*, 621 F.3d at 1380 ("The intent at issue is whether the parties intended the agreement to serve as an 'absolute and unconditional' release of the co-obligor executing the agreement.")). The rule applies where the aggrieved party's claims against one co-obligor involves a loss that "is identical to and inseparable from the loss" attributable to the other co-obligor. *Cherney*, 299 Ill. App. 3d at 1074; see also *In re Doctors Hospital of Hyde Park, Inc.*, 494 B.R. at 370 (noting that "parties are considered co-obligors where they are liable for a 'single indivisible injury' " and that the applicable "test *** relates to the releasor's 'single indivisible injury' "). The purpose of the common-law rule "is to prevent a claimant from receiving multiple recoveries for a single claim" (*Diamond Headache Clinic, Ltd.*, 172 Ill. App. 3d at 369), as the rule presumes that an unqualified release is "given in full satisfaction for the injury" at issue (*Cherney*, 299 Ill. App. 3d at 1070).

¶ 43 Here, the repudiation of the venture agreement resulted in a single indivisible injury, *i.e.*, the plaintiff's exclusion from the development of the Forbes leases. We note that in the proceedings below, the plaintiff acknowledged that he had only "suffered one

17

injury as a result of the breach."  Moreover, the loss at issue in the present case is identical to the loss that was at issue in the plaintiff's case against Deep Rock, *i.e.*, the loss of the profits and benefits that resulted from the plaintiff's exclusion from the development of the Forbes leases.  Additionally, the plaintiff's injury is equally attributable to both the defendant and Deep Rock as co-obligors.  See *Holmstrom v. Kunis*, 221 Ill. App. 3d 317, 324 (1991) ("[A]ll joint contractual obligations are also joint and several obligations," and pursuant to "[s]ection 2-410 of the Code of Civil Procedure [citation] *** '[a]ll parties to a joint obligation *** may be sued jointly, or separate actions may be brought against one or more of them.' ").  The release that Deep Rock obtained pursuant to the settlement agreement unconditionally released and fully discharged Deep Rock from all claims arising from the venture agreement, and no intent to not release or discharge the defendant is apparent from the face of the instrument. Accordingly, the common-law rule applies, and the plaintiff's claims against the defendant were properly dismissed pursuant to section 2-619(a)(6).

¶ 44   On appeal, the plaintiff argues that the defendant cannot use the release to shield itself from liability, because "Illinois law provides that absent an individual being specifically named in a release (or falling within one of the categories of the named releases), the release is obviously of no effect with respect to such individual."  As the defendant notes, however, the cases the plaintiff relies on in support of this contention addressed the release provision set forth in the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq*. (West 2012)) (see *Trexler v. Chrysler Corp.*, 104 Ill. 2d 26, 29 (1984); *Alsup v. Firestone Tire & Rubber Co.*, 101 Ill. 2d 196, 198-201 (1984);

18

*McNamara v. Shermer*, 157 Ill. App. 3d 864, 865-67 (1987)), which is inapplicable here (*Cherney*, 299 Ill. App. 3d at 1071-72; see also *Jackson National Life Insurance Co. v. Gofen & Glossberg, Inc.*, 882 F. Supp. 713, 723 (N.D. Ill. 1995) ("[B]reach of a contractual duty cannot support a claim under the Contribution Act."); *People ex rel. Hartigan v. Community Hospital of Evanston*, 189 Ill. App. 3d 206, 213 (1989) ("[A]n action for breach of fiduciary duty is not a 'tort' for purposes of the Illinois Contribution Act.")).

¶ 45    In his reply brief, the plaintiff further argues that "Illinois courts have modified the common[-]law rule governing the release of co-obligors" so that "[n]ow[,] the determination of whether the release of one obligor releases any remaining obligors is based on the intent expressed in the language of the release when read in the light of the circumstances surrounding the transaction."  The plaintiff also suggests that the common-law rule should be deemed inapplicable here, because his cause of action against the defendant alleged a breach-of-fiduciary-duty claim that was not brought against Deep Rock.  Referencing section 2-410 of the Code of Civil Procedure (735 ILCS 5/2-410 (West 2012)), the plaintiff further asserts that the common-law rule should be deemed inapplicable, because Deep Rock and the defendant are jointly and severally liable on the venture agreement, and "their violations of the agreement are [thus] the equivalent of the breach of two independent contracts."  Although "points raised and argued for the first time in a reply brief are waived" (*Lustig v. Horn*, 315 Ill. App. 3d 319, 329 (2000)), we will address these contentions.

¶ 46    We recognize that in some instances, the circumstances surrounding the execution

19

of a release can defeat the strict application of the common-law rule. Here, however, no such circumstances exist, and the plaintiff's cited cases are readily distinguishable.

¶ 47    In *Diamond Headache Clinic, Ltd.*, 172 Ill. App. 3d at 368-70, for instance, the plaintiff sued two defendants for separate and different injuries arising from independent acts. Because the defendants were thus not co-obligors jointly and severally liable for a single injury, the common-law rule was deemed inapplicable to the plaintiff's release. *Id*. at 369. Moreover, the "release" at issue was a "stipulation to dismiss" as to only one of the two defendants, and the release was executed while the litigation against both was still pending. *Id.* at 366-67. The plaintiff's intent not to release the remaining defendant was also apparent from the trial court's order entered on the stipulation to dismiss, which specifically indicated that only those matters involving the released party had been settled and that the plaintiff's cause continued as to the remaining defendant. *Id.* at 367.

¶ 48    Similarly, in *In re Estate of Constantine*, 305 Ill. App. 3d 256, 258-59 (1999), the release at issue was executed in conjunction with the entry of an agreed order that specifically stated that the release was effective as to only one of three obligors and did not release the remaining two. Under the circumstances, the "release" was thus deemed a covenant not to sue. *Id*. at 260.

¶ 49    Here, nothing suggests that the release at issue was executed in conjunction with an entered order limiting its effect or otherwise reserving any rights as to the defendant or any other third party. Additionally, when the release was executed, there was no litigation pending against the defendant. The release was executed in December 2004, and the plaintiff did not seek to recover damages from the defendant for violating the

20

venture agreement until February 2011. The release unconditionally released Deep Rock from all claims arising from the venture agreement, and no intent not to release the defendant is apparent from the face of the release. Additionally, the repudiation of the venture agreement resulted in a single injury attributable to both the defendant and Deep Rock, and the loss claimed in the instant case is the same as that claimed in the plaintiff's case against Deep Rock. Although the plaintiff now claims that it was not his intent to release the defendant, that is not a relevant consideration. As previously indicated, under the common-law rule, an absolute and unconditional release of one co-obligor must be construed as a release of all co-obligors liable for the plaintiff's loss, whether or not the plaintiff was "ignorant that this would be its legal effect." *Cherney*, 299 Ill. App. 3d at 1074-75.

¶ 50 The plaintiff also suggests that the common-law rule should be deemed inapplicable here, because his cause of action against the defendant alleged a breach-of-fiduciary-duty claim that was not brought against Deep Rock. As indicated above, however, the common-law rule applies regardless of whether the co-obligors to an agreement owed differing duties to the aggrieved party, and the applicable test is whether the aggrieved party's claims against one co-obligor stem from a loss that "is identical to and inseparable from the loss" attributable to the other co-obligor. *Cherney*, 299 Ill. App. 3d at 1074; *In re Doctors Hospital of Hyde Park, Inc.*, 494 B.R. at 370.

¶ 51 Referencing section 2-410, the plaintiff further asserts that because Deep Rock and the defendant are jointly and severally liable on the venture agreement, "their violations of the [venture] agreement are the equivalent of the breach of two independent contracts."

21

The plaintiff thus suggests that his instant cause of action on the venture agreement is not barred by operation of the common-law rule. Again, we disagree.

¶ 52　Section 2-410 provides that "[a]ll parties to a joint obligation *** may be sued jointly, or separate actions may be brought against one or more of them" and that "[a] judgment against fewer than all the parties *** does not bar an action against those not included in the judgment or not sued." 735 ILCS 5/2-410 (West 2012). It further provides, however, that "[n]othing herein permits more than one satisfaction" (*id.*), which is precisely what the plaintiff is seeking here. As noted above, the common-law rule presumes that an unqualified release is given in "full satisfaction" for the underlying injury (*Cherney*, 299 Ill. App. 3d at 1070), and the purpose of the rule "is to prevent a claimant from receiving multiple recoveries for a single claim" (*Diamond Headache Clinic, Ltd.*, 172 Ill. App. 3d at 369). Although section 2-410 arguably allows a party to sue on a joint obligation as though multiple contracts exist, it does not allow for multiple recoveries for a single injury. As such, there is no inconsistency or conflict between the common-law rule and section 2-410.

¶ 53　Even if we were to conclude that the common-law rule regarding the unqualified release of one co-obligor were somehow inapplicable in the present case, we would still have to find that the plaintiff's claims against the defendant were not barred by the terms of the assignment that Deep Rock obtained pursuant to the settlement agreement. As previously noted, in his responsive pleadings in opposition to the defendant's motions to dismiss, the plaintiff did not address or acknowledge the defendant's argument that his claims were barred by the assignment. On appeal, the only argument that the plaintiff

22

makes with respect to the assignment consists of cursory statements included in his reply brief. Although the point is waived and arguably conceded, we will nevertheless examine the assignment's legal effect on the plaintiff's instant cause of action.

¶ 54 Pursuant to the assignment that Deep Rock obtained under the terms of the settlement agreement, the plaintiff assigned to Deep Rock "all his right, title[,] and interest in and to" the Forbes leases. The plaintiff further warranted that his title to the interests was "free and clear from all liens, encumbrances[,] and adverse claims." The assignment also included a release provision stating that the plaintiff forever released and disclaimed "all claims, rights, titles[,] and interest in oil and gas leases in, off setting[,] or adjoining Steven [*sic*] Forbes State Park." The assignment's release provision also specifically released and disclaimed all the "claims, rights, titles[,] or interests described" in the notice. As previously indicated, the notice specifically named Deep Rock and the defendant as parties to the notice and suggested that they had violated the terms of the venture agreement by not giving the plaintiff his proportional interest in the Forbes leases.

¶ 55 "An assignment is the transfer of some identifiable property, claim, or right from the assignor to the assignee." *YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*, 403 Ill. App. 3d 1, 5 (2010). "Once made, an assignment puts the assignee into the shoes of the assignor" (*Collins Co. v. Carboline Co.*, 125 Ill. 2d 498, 512 (1988)), and the assignor no longer has any rights in the thing assigned (*People v. Wurster*, 97 Ill. App. 3d 104, 106 (1981)).

¶ 56 Here, the plaintiff unequivocally assigned to Deep Rock all of his rights, title, and

interests in and to the Forbes leases. As part of the assignment, he further released and disclaimed all claims, rights, titles, and interests described in the notice. The defendant was a named party to the notice, and the plaintiff's release was necessary to effectuate his guarantee that the title that he was assigning was free and clear of all adverse claims. See *Newcastle Properties, Inc. v. Shalowitz*, 221 Ill. App. 3d 716, 728 (1991) (when construing an agreement, a court must give effect to the intent of the parties). Under the circumstances, we agree with the defendant's observations that the assignment "clearly describes the interests which form the basis for [the plaintiff's] claims against [the defendant]" and that the plaintiff "cannot now seek to enforce his rights in the very interests which he assigned away in 2004." As a result, even if the plaintiff's present cause of action were not barred by the five-year statute of limitations applicable to unwritten contracts or by operation of the common-law rule regarding the unqualified release of one co-obligor, summary judgment was properly entered pursuant to section 2-619 in light of the assignment that Deep Rock obtained in No. 02-MR-63.

¶ 57 We lastly address the plaintiff's suggestion that the defendant is judicially estopped from asserting any right of protection flowing from the settlement agreement. The plaintiff maintains that because the defendant emphasized that it had not been a party to the settlement agreement when successfully moving to sever the instant case from the plaintiff's cause against Deep Rock, the defendant should not now be allowed to claim that it is entitled to the benefits of the agreement.

¶ 58 "Under the doctrine of judicial estoppel, a party who takes a particular position in a legal proceeding is estopped from taking a contrary position in a subsequent legal

proceeding." *Maniez v. Citibank, F.S.B.*, 404 Ill. App. 3d 941, 948 (2010).

¶ 59 "Our courts have identified five elements necessary for judicial estoppel to apply: (1) the party must have taken two positions; (2) the positions must be factually inconsistent; (3) the positions were taken in separate judicial or quasi-judicial proceedings; (4) the person intended the trier of fact to accept the truth of the facts alleged; and (5) the party succeeded in the first proceeding and received some benefit therefrom." *Id.*

¶ 60 "Judicial estoppel applies to statements of fact and not to legal opinions or conclusions." *Id.* at 949; see also *McNamee v. Sandore*, 373 Ill. App. 3d 636, 649 (2007) ("The doctrine does not apply to all types of inconsistency, but only inconsistency in assertions of fact.").

¶ 61 In No. 11-L-47, the plaintiff's complaints against Deep Rock alleged that it had breached the terms of the settlement agreement by failing to make full payment on the 1% interest in the Forbes leases that Deep Rock assigned to the plaintiff. The plaintiff's instant cause of action against the defendant, on the other hand, stems from the defendant's violation of the venture agreement. When successfully arguing that the two causes should be severed, the defendant's attorney, who was and is also Deep Rock's attorney, consistently maintained that the actions were separate and distinct, that the alleged injury involved in each case was different, and that Deep Rock and the defendant had no interest in the other's litigation.

¶ 62 On appeal, the plaintiff argues that the defendant's attorney took two factually inconsistent positions by first arguing that the defendant and Deep Rock were not jointly

25

liable and that the settlement agreement and the release that Deep Rock obtained pursuant thereto had nothing to do with the defendant and then later claiming that the defendant and Deep Rock were co-obligors liable for a single indivisible injury and that the plaintiff's release of Deep Rock thereby released the defendant. Considered in their proper context, however, these positions were not factually inconsistent. They pertained to separate cases involving entirely different issues. Counsel's earlier statements addressed the dissimilarities between the causes of action arising from the defendant's violation of the venture agreement and Deep Rock's alleged violation of the settlement agreement. Counsel's subsequent reliance on the common-law rule regarding the release of a co-obligor was merely an invocation of the applicable law with respect to the defendant's liability for its breach of the venture agreement. Counsel rightly observed that the defendant was neither liable for nor interested in Deep Rock's alleged violation of the settlement agreement and that Deep Rock, having previously settled its disputes with the plaintiff arising from its breach of the venture agreement, was neither liable for nor interested in the plaintiff's claims against the defendant. As previously indicated, by operation of law, the defendant benefitted from the release and the assignment that Deep Rock obtained pursuant to the settlement agreement, whether or not the plaintiff and Deep Rock intended such a result and despite the fact that the defendant was not a party to the agreement. As an aside, we note that the defendant correctly observes that many of the statements that the plaintiff points to on appeal to demonstrate the alleged inconsistency of the defendant's positions "were actually statements made on behalf of Deep Rock." In any event, judicial estoppel bars "factual inconsistencies, not legal

26

inconsistencies" (*Sandore*, 373 Ill. App. 3d at 650) or conclusions or opinions that are only seemingly inconsistent. We accordingly reject the plaintiff's intimation that the defendant is judicially estopped from asserting any right of protection arising from the settlement agreement.

¶ 63                                   The Trial Court's Recusal

¶ 64    In August 2013, Deep Rock filed a motion for summary judgment in No. 11-L-47. In September 2013, the plaintiff filed a pleading in opposition to the motion.

¶ 65    On October 1, 2013, the trial court held a hearing on Deep Rock's motion for summary judgment. At the hearing, Deep Rock argued that it had proven that the plaintiff had not been denied any payments due on his 1% assigned interest in the Forbes leases with respect to the oil harvested from the leases but conceded that there arguably remained a question of fact as to whether the plaintiff was entitled to a share of the monies obtained from the sale of "salvaged oil" that had been extracted from "tank bottoms" during the drilling process. Deep Rock thus suggested that its motion for summary judgment be treated as a motion for summary judgment as to the "major issue rather than a summary judgment for the whole thing."

¶ 66    In a letter dated October 3, 2013, counsel for Deep Rock wrote the trial court clarifying its arguments and reiterating its position regarding the possible entry of an order granting partial summary judgment. The letter was accompanied by a proposed order and a copy of the statute governing summary judgments (735 ILCS 5/2-1005 (West 2012)). It is undisputed that Deep Rock failed to contemporaneously forward a copy of the correspondence and proposed order to the plaintiff.

27

¶ 67    On October 7, 2013, using Deep Rock's proposed order, the trial court granted partial summary judgment in favor of Deep Rock in No. 11-L-47.  In an accompanying docket entry, observing that it appeared that the plaintiff had not been provided with a copy of Deep Rock's letter to the court, the court directed the circuit clerk to send the plaintiff's attorney a copy of the letter along with a copy of the order granting partial summary judgment.  Indicating that the letter had not influenced the court's ruling, the docket entry further noted that the letter was a summation of Deep Rock's arguments and did not include anything that had not already been addressed.  The record in No. 11-L-47 indicates that Deep Rock subsequently also sent the plaintiff's attorney a copy of its correspondence to the court, accompanied by a letter explaining that its failure to previously do so had been unintentional.

¶ 68    In a letter dated October 22, 2013, the plaintiff's attorney advised Deep Rock's attorney that he suspected that Deep Rock "never intended" to provide the plaintiff with a copy of its letter to the court until after the order granting partial summary judgment had been entered.  The plaintiff further indicated that it would be moving to vacate the trial court's judgment order in light of the *ex parte* communication.

¶ 69    On October 23, 2013, the plaintiff filed a motion to vacate the trial court's order granting partial summary judgment in light of Deep Rock's *ex parte* communication with the court.  As an appendix, the motion to vacate included a copy of the plaintiff's October 22, 2013, correspondence to Deep Rock's attorney.

¶ 70    On December 17, 2013, at the hearing on the defendant's section 2-619 motions in the instant case, the plaintiff's motion to vacate the trial court's order granting partial

28

summary judgment in No. 11-L-47 was addressed. Plaintiff's counsel argued that whether Deep Rock's failure to provide him with a copy of the October 3, 2013, correspondence had been "a mistake or not," the correspondence was nonetheless an improper *ex parte* communication to which the plaintiff was entitled to respond. Without objection, the trial court agreed, vacated its previously entered order, and stated that it would give the plaintiff whatever time he deemed necessary to prepare a response.

¶ 71 On December 27, 2013, the trial court entered its order granting the defendant's motions to dismiss in the present case. On January 14, 2014, the plaintiff filed a surreply in opposition to Deep Rock's motion for summary judgment in No. 11-L-47, which was virtually identical to his September 2013 pleading in opposition to the motion. The record in No. 11-L-47 indicates that on February 19, 2014, the trial court held a final hearing on "[a]ll pending motions" in the case. Notably, a transcript of the proceedings is not included in the record on appeal in the present case or in the record on appeal from the trial court's judgment in No. 11-L-47.

¶ 72 On February 25, 2014, the trial court entered a written order reinstating its previously vacated order granting partial summary judgment in favor of Deep Rock in No. 11-L-47. In the order, the court specifically stated that its judgment was "[b]ased solely on the record and [the] case law submitted." After making an express written finding that there was no just reason for delaying either enforcement or appeal of the judgment pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), the trial court further stated, without elaboration, that it was recusing itself from all future proceedings in the instant case and in No. 11-L-47. On March 7, 2014, the plaintiff filed

29

a timely notice of appeal in No. 11-L-47.

¶ 73    Although not specifically raised as an argument (see *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010)), in the present appeal and on appeal from the trial court's judgment in No. 11-L-47, the plaintiff seemingly takes issue with the timing of the trial court's recusal.  The plaintiff maintains that the trial court's decision to recuse itself after entering judgment in both of his causes, without explanation, is "curious[ ]" and "strange[ ]."  At oral argument, plaintiff's counsel suggested that the trial court acted inappropriately.

¶ 74    Pursuant to Illinois Supreme Court Rule 63(C)(1), "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned," including instances where "the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding."  Ill. S. Ct. R. 63(C)(1)(a) (eff. July 1, 2013).  Additionally, "Rule 63(C)(1)'s direction to judges to voluntarily recuse themselves where their 'impartiality might reasonably be questioned' [citation] includes 'situations involving the appearance of impropriety.' "  *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 43.  Rule 63 does not mandate that a trial court state its reason for recusal on the record or in its recusal order, unless the court seeks a waiver of its disqualification.  See Ill. S. Ct. R. 63(C), (D) (eff. July 1, 2013).

¶ 75    "Whether a judge should recuse himself is a decision in Illinois that rests *exclusively within the determination of the individual judge*, pursuant to the canons of judicial ethics found in the Judicial Code."  (Emphasis in original.)  *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 45.  Nevertheless, "under existing law, a party may seek

relief on appeal on the alternative ground that a trial judge should have recused himself or herself under Rule 63(C)(1)." *Id.* ¶ 147 (Karmeier, J., specially concurring). "When reviewing a trial judge's recusal decision, we must determine whether the decision was an abuse of the judge's discretion." *Barth v. State Farm Fire & Casualty Co.*, 228 Ill. 2d 163, 175 (2008).

¶ 76    Here, to the extent that the plaintiff suggests that the timing of the trial court's recusal should be viewed as an indication of possible bias, "[a]llegations of judicial bias must be viewed in context and should be evaluated in terms of the trial judge's specific reaction to the events taking place." *People v. Jackson*, 205 Ill. 2d 247, 277 (2001). Here, the circumstances suggest that the trial court's decision to recuse itself might have stemmed from its *ex parte* communication with Deep Rock's attorney, even though it is undisputed that the trial court properly dealt with the situation. See *Kamelgard v. American College of Surgeons*, 385 Ill. App. 3d 675, 680 (2008) ("Under Rule 63, the judge who participates in an *ex parte* communication must make 'provision promptly to notify all other parties of the substance of the *ex parte* communication and allow[ ] an opportunity to respond.' [Citation.]"). As noted above, in its order reinstating its previously vacated order in No. 11-L-47, the court specifically stated that its judgment was "[b]ased solely on the record and [the] case law submitted," which would be a reasonable response to a suggestion that its judgment had been improperly influenced by the letter from Deep Rock's attorney. It is equally plausible that the court's recusal resulted from a personal bias against one or both of the parties that did not exist when it initially entered its judgment order in No. 11-L-47. In the absence of an explanation

31

from the trial court and without a transcript of the proceedings immediately preceding its recusal, however, we can only speculate. Nevertheless, we cannot conclude that the timing of the court's recusal alone suggests judicial bias or otherwise creates an appearance of impropriety warranting a reversal of the court's judgment.

¶ 77 "It is well settled that an appellant bears the burden of preserving a sufficient record for review and any doubts arising from an incomplete record will be resolved against the appellant." *People v. Ranstrom*, 304 Ill. App. 3d 664, 672 (1999). "When the record presented on appeal is incomplete, this court will indulge in every reasonable presumption favorable to the judgment from which the appeal is taken, including that the trial court ruled or acted properly." *Id*. "Trial judges are presumed to be fair and impartial," and "[a] party alleging judicial bias must overcome this presumption." *Lesher v. Trent*, 407 Ill. App. 3d 1170, 1176 (2011). Moreover, to properly assess whether an appearance of impropriety warranted a judge's recusal, a reviewing court must know and understand all of the relevant facts. *People v. Buck*, 361 Ill. App. 3d 923, 932 (2005).

¶ 78 Here, the trial court was in the best position to determine whether it needed to recuse itself (*Kamelgard*, 385 Ill. App. 3d at 681), and "it is precisely in situations such as this, where the cold record suggests an apparent contradiction, that we defer to the circuit court's discretion" (*People v. Shaw*, 186 Ill. 2d 301, 317 (1998)). Moreover, although all of the facts surrounding the trial court's recusal are unclear, nothing suggests that the court's judgment was based on anything other than the law applicable to the evidence presented for its consideration. See *Kamelgard*, 385 Ill. App. 3d at 683; *Bauer v. Memorial Hospital*, 377 Ill. App. 3d 895, 912 (2007).

¶ 79    Under the circumstances, we conclude that the plaintiff has failed to overcome the presumption that the trial court was fair and impartial.  We further conclude that the timing of the trial court's recusal does not in and of itself create an appearance of impropriety warranting a reversal of its judgments.  We also note that the record does not indicate that the plaintiff ever sought clarification of the trial court's unexplained recusal, so the court has not been afforded an opportunity to formally address the matter.  Lastly, although nothing suggests that the trial court's judgments were improperly influenced, because all of the issues raised in the plaintiff's present appeals are reviewed *de novo*, "we perform the same analysis a trial court would perform and give no deference to the judge's conclusions or specific rationale."  *Bituminous Casualty Corp. v. Iles*, 2013 IL App (5th) 120485, ¶ 19.  "The term '*de novo*' means that the court reviews the matter anew−the same as if the case had not been heard before and as if no decision had been rendered previously."  *Ryan v. Yarbrough*, 355 Ill. App. 3d 342, 346 (2005).

¶ 80                                    CONCLUSION

¶ 81    For the foregoing reasons, we hereby affirm the trial court's judgment granting the defendant's section 2-619 motions to dismiss.


¶ 82    Affirmed.

2015 IL App (5th) 140037

NO. 5-14-0037

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

DUANE HASSEBROCK,                              )     Appeal from the
                                               )     Circuit Court of
    Plaintiff-Appellant,                       )     Marion County.
                                               )
v.                                             )     No. 12-L-56
                                               )
CEJA CORPORATION,                              )     Honorable
                                               )     Michael D. McHaney,
    Defendant-Appellee.                        )     Judge, presiding.
_____

**Rule 23 Order Filed:**      February 25, 2015
**Motion to Publish Granted:**  March 31, 2015
**Opinion Filed:**          March 31, 2015
_____

**Justices:**      Honorable S. Gene Schwarm, J.

              Honorable Judy L. Cates, P.J., and
              Honorable Melissa A. Chapman, J.,
              Concur

_____

**Attorneys**    Joseph A. Bartholomew, Stephanie A. Brauer, Cook, Ysursa,
**for**         Bartholomew, Brauer & Shevlin, Ltd., 12 West Lincoln Street,
**Appellant**  Belleville, IL 62220-2085

_____

**Attorneys**    George C. Lackey, Joanne T. Stevenson, Lackey & Stevenson, P.C.,
**for**         331 East Broadway, P.O. Box 808, Centralia, IL 62801
**Appellee**

_____